**HALVERSON et al. v. LIVENGOOD.**
(No. 3543.)

Court of Civil Appeals of Texas. Texarkana.
March 15, 1928.

1. Executors and administrators ⬤═20(8)— "Domicile" of decedent held for jury in administration proceedings (Rev. St. 1925, art. 3293).

Under Rev. St. 1925, art. 3293, relative to administration of estates, trial court improperly directed verdict to effect that county court, wherein deceased had at one time resided, had jurisdiction of administration proceedings where evidence was such as to warrant finding that domicile had been changed prior to his death; since "domicile" as used in such statute means home or place or permanent residence of deceased.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Domicile.]

2. Executors and administrators ⬤═10—Law relative to administration of estates required administration in county where deceased had established fixed place of residence (Rev. St. 1925, art. 3293).

Rev. St. 1925, art. 3293, requiring administration in county where deceased resided, if he had domicile or fixed place of residence, *held* to require administration in county where fixed place of residence had been established rather than residence as commonly used.

Appeal from District Court, Grayson County; F. E. Wilcox, Judge.

Application by Mrs. Bird Fielder Livengood for administration of estate of B. L. Fielder, deceased. From a judgment sustaining the jurisdiction of county court, Mrs. Laura Halverson and others, contestants, appeal. Reversed and remanded.

Cone Johnson, of Tyler, and Webb & Webb, of Sherman, for appellants.

Freeman, McReynolds & Hay, of Sherman, for appellees.

HODGES, J. B. L. Fielder died in the city of Dallas on the 14th day of October, 1926. He left an estate valued at $200,000. At the time of his death Fielder was a widower and was occupying a room in a house owned by

---

him in the city of Dallas. He was survived by one child, Mrs. Livengood, and by two sisters, who are appellants in this proceeding. Soon after his death Fielder's daughter, Mrs. Livengood, joined pro forma by her husband, filed in the county court of Grayson county an application for appointment as temporary administratrix of the estate of her father. The application alleged the necessary facts to give the court of that county jurisdiction, and further stated that the deceased died intestate. She also asked that the temporary appointment be made permanent at a later date. In December following Mrs. Halverson, a sister of the deceased, joined by other collateral relatives, filed a plea to the jurisdiction of the county court of Grayson county and a contest of the appointment of Mrs. Livengood as permanent administratrix of the estate. They allege, among other things, that Fielder left a will in which he bequeathed a portion of his property to the contestants; that he died in Dallas county, where the greater portion of his estate was situated; that he did not at the time of his death have a domicile or place of residence in Grayson county, but that such domicile or fixed place of residence was in Dallas county or in Smith county. The contest in the county court resulted in a judgment sustaining the jurisdiction of that court. An appeal was prosecuted to the district court, where the same issues were presented. After hearing the evidence the court gave a peremptory instruction directing a verdict against the contestants, thus again sustaining the jurisdiction of the county court of Grayson county. In this appeal it is contended that the state of the evidence was such that the jury should have been permitted to determine the issue of fact as to where the domicile of Fielder was located at the time of his death, and that the probate court of the county in which his domicile was situated had exclusive jurisdiction of the probate proceedings.

The appropriate provisions of the statute fixing the venue of probate proceedings of this character are found in article 3293 of the Revised Statutes of 1925, and are as follows:

"Wills shall be admitted to probate, and letters testamentary or of administration shall be granted: (1) In the county where the deceased resided, if he had a domicile or fixed place of residence in the state. (2) If the deceased had no domicile or fixed place of residence in the state, but died in the state, then either in the county where his principal property was at the time of his death, or in the county where he died. (3) If he had no domicile or fixed place of residence in the state, and died without the limits of the state, then in any county in this state where his nearest of kin may reside. (4) But if he has no kindred in this state, then in the county where his principal estate was situated at the time of his death."

Article 3294 reads as follows:

"When two or more courts have concurrent jurisdiction of an estate, the court in which application for letters testamentary or of administration thereon is first filed shall have and retain jurisdiction of such estate to the exclusion of such other court or courts."

[1] The judgment of the trial court is defended upon the ground that the word "domicile," as used in the first subdivision above quoted, should be interpreted to mean "residence"; that the evidence shows that Fielder had at least a temporary residence in Grayson county, and for that reason the county court of Grayson county had concurrent jurisdiction with the probate court of any other county in which he maintained a domicile or residence; that the county court of Grayson county having first acquired jurisdiction should be allowed to retain it under the provisions of article 3294.

The evidence shows that until about 10 years before his death Fielder's home, his fixed place of abode, was in Grayson county, and had been for a number of years. During that time he was engaged in business in Sherman. Some time before his death he retired from active business, and thereafter divided his time between Sherman, Dallas, and Tyler. The home of his daughter was in Sherman. One sister lived in Dallas and another in Tyler. He owned considerable real and personal property in both Dallas and Sherman, and owned some stock in a bank in Tyler, in Smith county. In Sherman he owned a two-story brick building, the lower part of which he rented to tenants for business purposes. The second story was rented for a rooming house, but he reserved one room and furnished it for his own use while in Sherman. Some years prior to his death he purchased a residence in Dallas, to which he moved some of his household goods from Sherman, and where he resided at intervals for a number of years. The house was occupied a few years by his sister Mrs. White and her daughter. One of the rooms was reserved and furnished by Fielder for his own use, and that room was occupied by him while he was in Dallas. He also had a private desk in one of the banking institutions of Dallas in which he was financially interested. The evidence further shows that he frequently visited Tyler, where one of his sisters resided, and in whose house he had a room furnished for his exclusive use, and that during his visits to Tyler he occupied that room. According to the testimony he at different times claimed each one of those places as his home. Some of the witnesses testified that he spent the greater portion of his time in Dallas, while others testified that he spent most of his time in Sherman. The state of the evidence is such that the jury might have found that his domicile, or fixed place of residence, was in either place—Dallas or Sherman.

Counsel for appellee contends, and apparently the trial court took the same view, that the term "domicile," as used in article 3293, means "residence," or a temporary place of

abode, and not a fixed habitation or legal domicile. If that construction be correct, then the probate court of Grayson county had jurisdiction, and the judgment of the district court should be affirmed.

The evidence is conclusive that Fielder resided in each of those counties a large portion of his time during the last 10 years of his life. The evidence was sufficient to warrant the court in concluding as a matter of law that he had at least a temporary residence in Grayson county. As supporting her construction of article 3293 appellee refers to the case of Pearson v. West, 97 Tex. 238, 77 S. W. 945, in which a similar construction was given to the word "domicile" as used in article 1995. That article is as follows:

"No person who is an inhabitant of this State shall be sued out of the county in which he has his domicile except in the following cases: [Then follow the numerous exceptions to this article.]"

In discussing that question the court said:

"The case of Brown v. Boulden [18 Tex. 431] was decided in the year 1857, and the law construed was enacted in the year 1846. In 1863 the Legislature amended the law of 1846, but re-enacted that part quoted above in the exact language of the original law. See Laws 10th Leg., p. 10. The Legislature has frequently amended the law, adding new exceptions to those already enacted, but has made no change in the language as it was construed in Brown v. Boulden. In 1876 there was a revision of the laws of this state, and the same language was embraced in the Revised Statutes without any alterations; and in 1895 there was a revision of the laws of this state in which the same language was embraced as article 1194. In the twenty-seven exceptions to the general rule there are ten which depend upon the residence or domicile of a party, and of these there are four in which the word 'domicile' is used and six in which the word 'residence' is used to designate the place of venue, showing that the word domicile and residence has been used by the Legislature interchangeably. We think that these facts show conclusively that the Legislature used the word 'domicile' in view of the construction which the court had placed upon it, and that its use was in the sense of residence."

Statutes regulating the local venue of legal proceedings are generally designed to provide for the convenience of the parties involved. The provisions fixing the venue of actions against living persons were, in the main, manifestly adopted to prevent serious inconveniences and probable injury to defendants from the bringing of suits against them in counties remote from where the defendants resided and transacted their business. Such inconvenience, however, could not be claimed by a defendant when sued in a county where he spent so large a portion of his time as to make that county a place of residence. Hence, in construing article 1995 the court was probably influenced by the real purpose

of the enactment, as well as by the manner in which the word "residence" was indiscriminately used in the exceptions to the general provision. But in fixing the venue for the administration of an estate the Legislature was dealing with a situation entirely different from that which existed during the lifetime of the owner of the estate. Generally in actions against a living person the location of his property is of no importance in determining his convenience in defending the suit. But in the probate proceedings which become necessary after his death the location of the property is an important factor in determining where the administration may be most conveniently conducted and upon what court jurisdiction should be conferred. As a general rule the bulk of one's property is situated in the county of his domicile, the county in which he has established a home. It is also generally the case that most of the creditors reside in that vicinity. That being true, the county in which the home of the deceased had been established and maintained would usually appear to be the county where it is most convenient and least expensive to conduct the probate proceedings necessary for the settlement of the estate. If we are correct in stating the purpose of the Legislature in fixing the venue for proceedings of this character, there is little reason for saying that the word "domicile" should be given a meaning different from its true legal signification —that is, the home or place of permanent residence of the deceased. Evidently the words "fixed place of residence," following the word "domicile," in the statute are intended as explanatory of the sense in which that word is used, and to signify a permanent residence as distinguished from one which is only temporary.

However, it may be contended that even if the deceased did have a domicile in a county other than Grayson, the proof conclusively showed that he had a temporary residence in that county, and for that reason the probate court of Grayson county had concurrent jurisdiction with the probate court in the county of his domicile. It is conceded that Fielder had a domicile in this state, and it is insisted that under the terms of the statute letters testamentary or of administration may be granted in any county where he resided. We do not think the statute is subject to that construction. Its meaning would not be altered if the language were transposed so as to read thus: "If the deceased had a domicile, or fixed place of residence, in this state, letters testamentary or of administration shall be granted in the county where he resided."

[2] When we take into consideration the purpose for which the statute was enacted and the language, "in the county," used in designating the place where probate proceedings shall be instituted, we think it clear that the Legislature was referring to the county

where the fixed place of residence had been established, or the domicile of the deceased.

In view of the evidence adduced upon the trial we think the court should have submitted to the jury the issue of fact as to where the deceased had his domicile, or fixed place of residence, at the time of his death. While it is true the proof conclusively showed that Fielder had formerly established his domicile in Grayson county, there was sufficient evidence to warrant the jury in concluding that prior to his death he had changed that domicile to another county.

The judgment is reversed and the cause remanded.