## BURNS v. NAPIER. (No. 12163.)

Court of Civil Appeals of Texas. Fort Worth.
June 15, 1929.

Hoffman & Bruce, of Wichita Falls, for appellant.

Bullington, Boone, Humphrey & King, of Wichita Falls, for appellee.

CONNER, C. J. This is an appeal from an order overruling appellant's plea of privilege to be sued in Hidalgo county in a suit instituted by appellee, E. W. Napier, in the district court of Wichita county, to recover an alleged debt amounting to $2,500, and to foreclose an alleged equitable lien on 300 shares of stock of a private corporation. The plea of privilege was in due form and duly verified, and alleged that appellant, at the time of the institution of the suit, and at the time of service of citation upon him, and at the time of the filing of the plea of privilege, was a resident citizen of Hidalgo county, and claimed the privilege of being sued in the district court of that county. Appellee, Napier, filed a controverting affidavit, alleging that the suit was for debt and foreclosure; that the appellant was and is a resident citizen of Wichita county, and has never been a resident of Hidalgo county; and further that, at the time of the filing of the suit and at the time of service upon him, appellant was, if not a resident of Wichita county, a transient person and was served with process in Wichita county; and further alleged that, if appellant was not a resident of Wichita County and was not a transient person, then appellant's residence was unknown, and that appellee's residence was in Wichita county, and hence that the venue was properly laid.

Upon a hearing had on September 29, 1928, the court overruled the plea of privilege, from

which order appellant has duly prosecuted this appeal.

The trial court failed to file findings of fact and conclusions of law. We are hence left to surmise the basis of his order, and a careful consideration of the evidence becomes necessary to a proper disposition of the appeal.

The approved statement of facts, too lengthy to be quoted in its entirety, has been carefully considered, and, as we view the evidence, Mr. Burns, called in behalf of appellee, testified, in substance, that some time in 1925 appellee, Napier, was employed to conduct some litigation in Wichita county for the Lowry Oil Corporation, of which appellant was vice president; that the parties then became acquainted, and later together went to Hidalgo county, in the Rio Grande Valley, with a view of entering into business, and, finding conditions suitable, as they thought, formed a corporation, capitalized at $100,000, for the establishment of a cold storage business. This was in the year 1926; the plant was established and conducted for some time; that during the organization and prosecution of the cold storage business, and since, appellant and his wife, they having no children, occupied apartments in Weslaco, Hidalgo county, owning and using such personal and household effects as was necessary to their living, until some time in the spring of 1927, when appellant sold his stock in the cold storage business to Judge Cameron, of Hidalgo county; that during this time, and ever since, he, appellant Burns, from time to time visited Wichita Falls, Muskogee, New York, and other places in the performance of his duties as vice president of the Lowry Oil Corporation; that he had never lived in Wichita Falls with the intent of making it his home, his visits to that place being official and temporary only; that he liked the climate of the Rio Grande Valley, and in the beginning, and yet, intended to live in Hidalgo county; that since the institution of this suit he had made one trip to Hidalgo county; that his company, the Lowry Oil Corporation, owned some oil leases in Webb county, some 50 miles from Hidalgo county, and that he went to investigate the condition of those properties; that he also had business with Judge Cameron and another; that they were talking of constructing a cold storage plant, and he was expected to be interested therein, although as yet he had not become definitely connected with them, but that he expected to own some stock in the corporation under the terms of "the contract which we were discussing"; that he was going to put up the plant and have some interest in it; that on this occasion he remained about two weeks, during which time he went to Austin in connection with the Lowry Oil Corporation's business; that "it is my intention to go back to Weslaco; that is, in Hidalgo county; I never intended to move away from down there; I have not moved away."

It further appears that some time about the 1st of June, 1928, appellant's wife, Mrs. W. R. Burns, gave up the apartment they were then occupying in Weslaco and rented another, stored their effects therein, paying in advance some three months' rent, and departed on one of her yearly visits to her old home in Michigan, where she remained until the day before the trial. Mrs. Burns testified to the effect that she had regularly made such visits for some 25 years; that she and Mr. Burns and Judge and Mrs. Napier went down to the Rio Grande Valley about Christmas time in 1926; that she and Mr. Burns moved to Weslaco about the 1st of July, 1927; that they first rented a furnished house, but also bought some things later and did light housekeeping for about one year; that Mr. Burns left Weslaco occasionally on visits; that about the 1st of May, 1928, he made a business trip to Wichita Falls, but that she did not go with him, but continued to occupy the furnished house for about six weeks after Mr. Burns left; that she was keeping books for the Rio Grande Products Company during that time; that her people lived in northern Michigan, and that she had been going there every summer for a vacation; that when she left for her vacation, about the 1st of June, 1928, she made arangements with Mr. Parker for a small apartment up over the cold storage plant, in which she stored her things, and to have some place to go to when she came back; that she stored therein all her household effects, linens, table, etc., and then went on her trip; that she remained in Michigan for about 3½ months, and arrived in Wichita Falls the night before the trial, but did not at that time know the suit was coming up; that she left Michigan with the intention of going to Weslaco and resuming living there; that she intended to go back and stay in that apartment until she decided where she wanted to live in the Valley. "We have not decided where we want to live in the Valley. I will live in Hidalgo county somewhere. I do not know for certain which place it will be. I rent that apartment, and will go back there and live until I decide what I want to do." That Mr. Burns still had holdings in Hidalgo county, to the extent that he was making a deal there; that he had no real estate holdings, and no other property, except his personal effects; that it was her intention to make her home in Hidalgo county; that she had been living there for two years.

A Mr. Wheeler, vice president and manager of the Lowry Oil Corporation at the time of the trial, testified that Mr. Burns makes periodical trips to Wichita Falls in the interest of that corporation, and had been doing that ever since he had been with the company; that Burns and his wife never set up housekeeping in Wichita Falls at any place, so far as he knew; that he recalled Mr. Burns' visit to Wichita Falls about the 1st of May, 1928, when he came on one of his regular visits, occupying rooms at the Duncan Hotel; that Mr.

Burns was a director and vice president of the Lowry Oil Corporation, and has been for about three years; that he, the witness, was manager of the company, but Mr. Burns made the trips to New York because he had connections in that place, and he, the witness, could not get away; that the main office of the Lowry Oil Corporation was in Delaware.

In opposition to the above testimony, Judge Napier testified:

"My name is E. W. Napier, and I am the plaintiff in this case. · I heard Mr. Burns' testimony this morning. I heard his testimony with reference to our business dealings. From the time that our business dealings started, along in January or February of 1927, until October of 1927, my relations with Mr. Burns were most friendly. During that time I had conversations with him with reference to where he intended to make his home. I have had frequent conversations with him about that. Mr. Burns told me repeatedly that he did not intend to make the Valley his home; he told me that his chief interests were in the Lowry Oil Corporation. He did not say that he was going to make Wichita Falls his home, but he has told me repeatedly during that period that he was coming back to Wichita Falls, but whether he would remain here permanently or not he did not say; but he has told me that he did not intend to remain in the Valley; that there was nothing in the Valley for him.

"Along in October he did mention to me his intention of selling out his interests; he told me in October, shortly after we had our original settlement, before our friendly relations were broken off—well, to begin with, I had a conversation with him in the plant before we became unfriendly, and he told me at that time about the condition he was in, and about what he was going to do; that he was going to sell out to Judge Cameron, and he said that he was getting out of the Valley when he did. After that I learned he had sold out. At the time I filed this suit, I had information that he had sold out. After he sold out, at the time I filed this suit, I believed that he was a resident of Wichita county, Texas. I presumed that he had come back, as he said he planned to do. My information was that he did not live in Hidalgo county at the time I filed this suit. I had information from Mr. Burns himself that Hidalgo was not his home. I had had frequent conversations with Mr. Burns about where his home was. I had no reason, at the time I filed this suit, to believe that he was a resident of Hidalgo county; on the contrary, I believed he was a resident of Wichita county, Texas."

Appellant, Burns, was recalled and examined by his counsel, and testified:

"I have heard Mr. Napier's statement that I told him, when I sold out my interests, I was going to get out of the Valley; I did not have that conversation with him. I never told him that I was going to leave the Valley

and go elsewhere to make my home; it was not my intention to leave there; I did not have any intention of leaving there. On the contrary, I intended remaining right there. We liked the climate—good climate—and I had a deal coming up, and I expected to remain there."

Article 1995, Rev. Statutes of 1925, provides that:

"No person who is an inhabitant of this state shall be sued out of the county in which he has his domicile except in the following cases: * * *

"2. * * * A transient person may be sued in any county in which he may be found.

"3. * * * If one or all of several defendants reside without the state or if their residence is unknown, suit may be brought in the county in which the plaintiff resides."

▮ In our decisions the words "domicile" and "residence" are held to be interchangeable. See Pearson v. West, 97 Tex. 238, 77 S. W. 945; O'Connor v. Cook (Tex. Civ. App.) 26 S. W. 1113.

▮▮ It has also been many times decided that the privilege to be sued in the county of one's residence is a valuable right, and that in order to sustain a suit against him in another county the facts authorizing it must be clearly shown, Russell v. Green (Tex. Civ. App.) 214 S. W. 448; Chamberlin v. Fox (Tex. Civ. App.) 54 S. W. 297; and that where a defendant has filed a plea of privilege in compliance with the statutes, as appellant did in this case, the burden of proof is on the plaintiff to show that the suit comes within one of the exceptions to the general article we have quoted. See Cogdell v. Ross (Tex. Civ. App.) 243 S. W. 559. In Kasch v. Williams (Tex. Civ. App.) 251 S. W. 816, it was said that no one should be deprived of his right to trial of an action affecting his life, liberty, or property in his own county, except on clear and convincing proof, and any doubt should be resolved in favor of the right.

▮ Under the well-recognized rules referred to, we think it clear that there is no support in the evidence for the order overruling appellant's plea of privilege, on the theory that appellant was a nonresident, or that his residence was unknown, within the meaning of the second exception above quoted. There is nothing tending to show that appellant, at the time of the institution of the suit and of service of citation upon him, was a resident of any state other than Texas, and it is clear, we think, that appellee was familiar with the known facts relating to appellant's removal to Hidalgo county, and his business, place where he lived, etc., and, if those facts are sufficient to have established a residence in that county on appellant's part, no probative force can be given to appellee's statement that he did not know where appellant resided at the time of the institution of the suit. As we construe appellee's testimony, his statement that he did not know where appellant

resided amounts to no more than that the facts as known to him were, in his judgment, insufficient to constitute a residence in Hidalgo county, and that he knew of no residence at any other place, unless it was at Wichita Falls. We are thus brought to a more critical examination of the evidence, in order to determine whether or not the evidence supports the order overruling the plea of privilege, on the theory that appellant was a "transient person" at the time of the institution of the suit and of service of citation upon him.

▉▉▉ We have failed to find and have been cited to no legislative definition' of the term "transient person," as used in the statutes. In 4 Words and Phrases, Second Series, p. 984, it is said that the word "transient" is a relative term, which, in the absence of any inflexible statutory or legislative definition, may be the source of much vexation and uncertainty. In defining the term "transient" in Black's Law Dictionary (2d Ed.) p. 767, it is said that in poor laws a "transient person" is not exactly a person on a journey from one known place to another, but rather a wanderer, ever on the tramp. Middlebury v. Waltham, 6 Vt. 203; Londonderry v. Landgrove, 66 Vt. 264, 29 A. 256. In Spanish law it is said that a "transient foreigner" is one who visits the country without the intention of remaining. Yates v. Iams, 10 Tex. 170. In 38 Cyc. p. 943, the word "transient," defined as an adjective, means "passing across, as from one thing or person to another; passing with time; of short duration; not permanent; not lasting; temporary; to pass away; not stationary or lasting; not lasting; not permanent; of short duration. As a noun, one who, or that which, is temporary, passing, or not permanent."

In the case of Penman v. Wayne, 1 Dall. 348, 1 L. Ed. 169, it seems that the legality of an arrest of a defendant on the ground that he had not been a resident of the state in which he was arrested for two years next before the writ issued, was involved, and it was proved by a witness that "the defendant had a real estate in Chester county, whereon his wife and several children constantly resided; that he had expressed an intention of selling his property in Georgia," where he had considerable property and had remained upwards of 15 months next before the writ issued; "that he never meant permanently to reside there, but went thither upon particular business; and that as soon as that was transacted he designed to return to his estate and family in Pennsylvania." It is said that "the court were unanimously and clearly of opinion that, upon these circumstances, the defendant ought to be considered as a resident of the state of Pennsylvania, and was entitled to his privilege as a freeholder."

In the case of Weller v. Guajardo, 174 S. W. 673, by the San Antonio Court of Civil Appeals, the place of Guajardo's residence was involved. The court held that the evidence showed beyond dispute that Guajardo and his wife abandoned their home in Musquiz, Mexico, about March 1, 1913, on account of the unsettled conditions prevailing in that country, and because there were no schools to which he could send children of whom he had charge and who resided with him; that at said time they established their home in San Antonio, Tex., in a rented house, for which they purchased the furniture, etc. They both lived in said city until August 1, 1913, when Guajardo returned to Mexico. He was appointed a colonel, and afterwards a brigadier general, in the army of Huerta, and was actively engaged in military operations in Mexico. His home at Musquiz was destroyed by fire in August, 1913, and he established no other residence in Mexico, unless the renting of a house at C. P. Diaz, where he was in charge of military operations, in which he kept his office and other things, may be said to have made him a resident of such town. His wife visited him upon one occasion for about a month, and upon other occasions for a few days, but left the balance of his family at San Antonio. Having been wounded on April 26, 1914, he left Mexico and went to Canada, remaining there until about August, 1914, when he returned to San Antonio, where he resided from then on up to the time of the trial of the case. His visit to Canada was intended as only a temporary one. He testified that, when he went to San Antonio, in March, 1913, he intended to make that city his home permanently; that he bought a lot to build on, but had not been there a sufficient time to carry out such intention. It was held that, regardless of whether he had the intention at some uncertain time in the future to establish a new home in Mexico, which he did not admit, he and his wife were such residents of Bexar county, Texas, at the time the suit was filed, and at the time the amended petition was filed, as to be entitled to the privilege of being sued in that county, citing Pearson v. West, 97 Tex. 238, 77 S. W. 944; Taylor v. Wilson, 99 Tex. 653, 93 S. W. 109; Gulf, C. & S. F. Railway v. Rogers, 37 Tex. Civ. App. 99, 82 S. W. 825.

We quote the following from the headnote in the case of Taylor v. Wilson, 99 Tex. 651, 93 S. W. 109, by the Supreme Court of Texas: "A statute provided that no person who was an inhabitant of the state should be sued out of the county in which he had his domicile except in specified cases, the third of which was where the defendant resided out of the state or his residence was unknown, in which case the suit might be brought in the county in which the plaintiff resided. Defendant, a citizen of New York, came to Texas to engage in the oil business, and resided there for 14 months up to the time of the filing of the suit, except three trips made to visit his family in New York where he also maintained a resi-

dence. Process was served on him in New York during one of such trips five days after he had left the state, but while he still continued his business and residence in Texas. Held, that defendant was a resident of the state, and was entitled to be sued in the county of his residence therein, his residence outside of the state being immaterial."

In the case of Brown v. Boulden, 18 Tex. 432, it appears that Brown sued Boulden in Colorado county. Citation to Colorado county was returned not found. Plaintiff amended by alleging that, since the commencement of the suit, defendant had removed to Gonzales county, and prayed citation to that county. Defendant pleaded in abatement under oath that at the time of the commencement of the suit he was, and still is, a resident of the county of Gonzales. The evidence was that the defendant had been residing in Colorado county, but that, at the date of the commencement of the suit, the defendant had determined to remove to Gonzales county, and had gone there himself, with some of his negroes and wagon, to build or prepare houses for his family to move to in that county; but he did not take his wife, children, a negro woman and her child, nor any of his hogs or cattle, etc. The defendant left his wife, children, and the negro woman and child at the residence of his son-in-law. The trial court instructed the jury that, if the defendant had left his home in Colorado county, and was engaged in preparing a home in Gonzales county, before the institution of the suit, they would find that the defendant was not a resident of Colorado county at the institution of the suit. Judge Wheeler, in disposing of the case, said, among other things, that:

"If a defendant has a known residence, he must be sued in the county of his residence. But if he is in the act of removing from one county to another, and his affairs are in such a state, that it cannot be certainly known in which county his residence in fact is, we think it may be held, consistently with the legislative intention, that the suit may be brought in either county. At all events, where as in this case, he has had his residence in one county for a considerable time anterior to the bringing of the suit, that, for the purposes of the suit, ought to be held to be the place of his residence, until he has effected an actual and complete change of residence from that to another county; not only by going to prepare a home for his family in the latter county, but by actually removing his family and principal effects from his former to his new home. The charge of the court made the fact of the defendant's having gone to Gonzales county to prepare, and being engaged there in preparing, a home for his family, effect a change of his residence, or domicile, to that county. This, we think, was error. To effect such change of residence, as to constitute the latter county his domicile, within the

spirit and intention of the statute he must have actually removed and acquired a home, and residence in that county in fact, as well as in intention. The defendant manifestly had not effected an actual and complete change of residence at the time of instituting the suit. He had not removed his family and effects; nor does it appear that he had completed his preparations for such removal. We are of opinion, therefore, that the evidence did not warrant the verdict, and, but for the error in the charge, the decision must have been different."

While the question has not been free from difficulty, we have concluded that the evidence is sufficient to show that, at the time of the institution of the suit and of service of citation, appellant's residence was in Hidalgo county, where, as we judicially know, a legally constituted court exists in which this suit may be tried. The evidence that appellant and his wife located in Hidalgo county with the intention of making that their home is not disputed, nor is it disputed that they continue to entertain that intention. The fact that they resided there in rented houses or apartments is not sufficient, we think, in this day and in view of the habit and custom of many people, to deny appellant the privilege of being sued in the county of his residence. Nor in the determination of the question is such right to be denied merely because he owns no real estate or personal property other than personal or household effects and stockholding interests in the business of the corporation. There seems to be no denial of the fact that, even after appellant sold his stock in the cold storage business, he, at the time of the suit, was negotiating with other parties in Hidalgo county to continue in business, and had occasion as vice president and director in the Lowry Oil Corporation to visit a nearby county to investigate conditions of its properties.

It is true appellee testified that in a number of conversations, "while they were on friendly terms," appellant had told him that, when he sold his stock in the cold storage business, he intended to leave the Valley. But these conversations, according to the evidence, occurred months before the institution of the suit, and, though we give full effect to these statements, they are too indefinite to constitute a legal basis for the conclusion that appellant was a transient person at the time of the institution of the suit. No time or place was named when or where appellant proposed to acquire another residence; no preparation, by removal of effects or otherwise, is shown, and under the circumstances we do not feel that appellant should be denied a privilege so firmly established and jealously guarded in the jurisprudence of our state. If a modification of the general rule as thus far enforced is thought to be advisable to meet the shifting conditions in the in-

dustrial life of the present age, we think that the change should be by legislative act, and not by judicial construction.

It is accordingly ordered that the judgment below be reversed, and here rendered for appellant, with direction that the suit be transferred to the district court of Hidalgo county, as prayed for in appellant's plea of privilege. It is further ordered that this opinion be certified to the trial court below for observance.