

# THE ATTORNEY GENERAL
## OF TEXAS

March 18, 1987

JIM MATTOX
ATTORNEY GENERAL

Frank E. Vandiver, PhD
President
Texas A&M University System
319 System Building
College Station, Texas 77843

Opinion No. JM-647

Re: Whether certain applicants for admission to Texas universities are residents of Texas for purposes of payment of tuition

Dear Dr. Vandiver:

You ask about the residency status of a student whose father is employed by the Department of State as a foreign service officer. The determination of whether a particular individual is a Texas resident is a question of fact which we cannot address in the opinion process. See Attorney General Opinion JM-367 (1985). We can, however, clarify several legal issues relevant to your question.

Because tuition rates at Texas colleges and universities are higher for nonresidents than for Texas residents, Educ. Code §54.051, it is necessary for colleges and universities to determine whether students are residents or nonresidents. See Educ. Code §54.052 (statutes regarding determination of residency status). The student in question is his father's dependent for federal income tax purposes. Therefore, section 54.052(c) of the Education Code governs the determination of whether the student is a resident or a nonresident:

> An individual who is under 18 years of age or is a dependent and who is living away from his family and whose family resides in another state or has not resided in Texas for the 12-month period preceding the date of registration shall be classified as a nonresident student.

See also Educ. Code §54.052(a)(3) ("dependent" means an individual who is claimed as dependent by his parent or guardian for federal income tax purposes). "Residence" for purposes of section 54.052 means "domicile." Sec. 54.052(a)(1). To determine whether the student in question is entitled to pay resident tuition, then, the university must ascertain the domicile of his father.

The key elements of the legal concept of "domicile" are actual residence in a place and an intent to make that place a permanent

home. Snyder v. Pitts, 241 S.W.2d 136, 139 (Tex. 1951). Ordinarily, there is a presumption that the place where a person lives is his domicile. Gallagher v. Gallagher, 214 S.W. 516, 518 (Tex. Civ. App. - San Antonio 1919, no writ). It is possible, however, to reside in one place and have a domicile elsewhere. Once a person establishes a Texas domicile he may live outside Texas without destroying his Texas domicile as long as he has the intent to retain his Texas domicile. Stone v. Phillips, 176 S.W.2d 932 (Tex. 1944); see also Peacock v. Bradshaw, 194 S.W.2d 551, 555 (Tex. 1946). In most cases someone who lives outside Texas must show evidence of his intent to retain his Texas domicile in order to overcome the presumption that the place a person actually lives is his domicile.

A rule promulgated by the Coordinating Board, Texas College and University System, incorporates the presumption that the place where a person actually lives is his domicile:

> If the parents of a minor move to another state or foreign country, or reside outside the state or in a foreign country at the time of enrolling in an institution of higher education, but claim legal residence in Texas, conclusive evidence must be presented that the father is still claiming legal residence in the State of Texas and that he has the present intent to return to the state. A certificate from the employer of the parents that the move outside the state was temporary and that there are definite plans to return the parents to Texas by a determinable future date may be considered in this connection.

19 T.A.C. §21.21(g) (1979); see Educ. Code §54.053 (Coordinating Board issues rules regarding nonresident tuition). That rule restates the common-law presumption discussed above and properly places the burden of establishing a Texas domicile on a person who lives outside Texas but claims to be a Texas domiciliary.

As indicated, the presumption that the place where a person lives is his domicile applies in most cases. The courts have, however, made an exception to that rule and have held that the presumption is not applicable to persons in the military. Rather, there is a presumption that a person in the military maintains the domicile he had at the time he entered the military throughout his entire period of active service. Gallagher v. Gallagher, 214 S.W. 516 (Tex. Civ. App. - San Antonio 1919, no writ); see also Attorney General Opinion JM-367 (1985). The court in Gallagher explained the rationale underlying that presumption as follows:

> Ordinarily, it is a presumption of law that where a person actually lives is his domicile, such presumption of course being rebuttable; but no such presumption could arise in the case of a soldier in active service, who has no choice of domicile, but must ordinarily cling to his domicile of origin. Ordinarily, an act of removal to a certain location, coupled with the intent to make a permanent residence there, might be sufficient to fix a domicile, but that is because the removal is voluntarily made, which could not occur in the case of a soldier in active service. It follows that the removal of the latter to a place and his residence there for years would not offer any probative evidence to corroborate evidence as to an intention to make the place his home, but it would be necessary to obtain other corroborative facts of that intention.

214 S.W. at 518. The Coordinating Board has properly included in its rules the court-created presumption that a person in the military keeps the domicile he had at the time he entered the military. 19 T.A.C. §21.24(d) (1979).

In Attorney General Opinion JM-367 (1985), we concluded that a court would find that the presumption of domicile that applies to persons in military service also applies to officers of the Public Health Service. We reached this conclusion because several federal statutes consider service with the Public Health Service to be active military service and because several judicial decisions have held that service with the Public Health Service is the equivalent of military service. It has been suggested that courts might extend the presumption of domicile that applies to persons in the military service to persons in the foreign service. We find no basis, however, for concluding that the courts would apply that presumption to persons in the foreign service. We find no statutes under which members of the foreign service are considered to be part of the military. See, e.g., 22 U.S.C. §3927 (1980) (chief of mission in a foreign country is responsible for all United States employees in that country except for those under military command). We must conclude therefore that the courts would apply to a person in the foreign service the presumption that a person's domicile is the place where he lives. That presumption is, of course, a rebuttable one, and we do think that it would be proper to consider in determining the issue of domicile that a person representing the United States in the foreign service is likely to have the intent of maintaining a domicile somewhere in the United States.

The student you inquire about offered some evidence that his father is a Texas domiciliary. Apparently the university concluded that he had not offered sufficient evidence to overcome the presumption that his domicile is outside of Texas. We cannot resolve fact questions in the opinions process. Unless we can hold that, as a matter of law, the evidence showed that the father was a Texas domiciliary -- and in this instance we cannot -- we may not object to the university's conclusion that the father is not a Texas domiciliary.

## SUMMARY

The foreign service is sufficiently distinct from the military that a court would probably not apply to a person in the foreign service a presumption such as that applied to military personnel, i.e., the presumption that a person in the military keeps the domicile he had when he entered military service.

Very truly yours

JIM MATTOX
Attorney General of Texas

JACK HIGHTOWER
First Assistant Attorney General

MARY KELLER
Executive Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Sarah Woelk
Assistant Attorney General