# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

—————————————
## NO. 03-07-00705-CV
—————————————

**In re Preston Graham**

—————————————
### ORIGINAL PROCEEDING FROM TOM GREEN COUNTY
—————————————

## D I S S E N T I N G   O P I N I O N

In this original proceeding, the majority concludes that the trial court's denial of relator Preston Graham's motion to transfer venue from Tom Green County to Travis County was an abuse of its discretion. The trial court declined to grant relator's motion made 1½ years after the will had been admitted to probate and only after litigation had erupted.[1] Because the majority improperly substitutes its judgment for that of the trial court in contravention of well-established standards of review, I respectfully dissent.

———————————————

[1] Decedent Dianne Hanks Graham's will was admitted to probate in February 2006; relator initially filed a motion to transfer venue in May 2007; and the hearing on the venue motion was held in November 2007. At the hearing, the trial court expressed concern with relator's venue motion:

> You said twice in your argument that everybody was fine when you filed—when the case was filed in Tom Green County. Everybody got along; everybody was in agreement when it was filed in Tom Green County. The decision to change the venue only came up when people became out of agreement, and that's concerning to me, that it was okay and everybody agreed that venue was here as long as everyone got along. But the minute that there was some issue between parties or beneficiaries, well, then suddenly it became appropriate at that point to change venue.

At the time of her ruling, the trial court recognized that the parties had presented conflicting evidence: "[E]ach side had a lot of information they presented in support of either argument."

"In mandatory venue mandamus actions, we look only to whether the trial court clearly abused its discretion in ruling upon the motion." *In re Applied Chem. Magnesias Corp.*, 206 S.W.3d 114, 117 (Tex. 2006); *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992). "A trial court clearly abuses its discretion if 'it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law.'" *Walker*, 827 S.W.2d at 839 (citation omitted). To be entitled to mandamus relief, a "relator must establish that the trial court could reasonably have reached only one decision." *Id*. at 840.

An appellate court may not substitute its own judgment for that of the trial court for matters committed to the trial court's discretion. *See Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002); *Walker v. Packer*, 827 S.W.2d at 840. "The test for abuse of discretion is not whether, in the opinion of the reviewing court, the facts present an appropriate case for the trial court's action. Rather, it is a question of whether the court acted without reference to any guiding rules and principles." *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985). A trial court does not abuse its discretion merely because it decides a discretionary matter differently than an appellate court would in a similar circumstance. *Id*. at 242.

The majority concludes that Travis County, and not Tom Green County, was decedent Dianne Hanks Graham's domicile at the time of her death, and that, under the mandatory venue provisions of the Texas Probate Code, the trial court was required to transfer the case to Travis County. *See* Tex. Prob. Code Ann. § 6(a) (West 2003).[2] The elements of domicile are actual

---

[2] The probate code provides that if a decedent does not have a domicile or fixed place of residence in this state, venue is proper in the county in which the decedent died or in the county where his principal property was at the time of death. *See* Tex. Prob. Code Ann. § 6(b) (West 2003).

2

residence "coupled with the purpose to make the place of residence one's *permanent* home." *Maddox v. Surber*, 677 S.W.2d 226, 228 (Tex. App.—Houston [1st Dist.] 1984, no writ) (emphasis added); *see also Snyder v. Pitts*, 241 S.W.2d 136, 139 (Tex. 1951) ("The elements of the legal concept of domicile are: 1. An actual residence— 2. The intent to make it the permanent home. The word *home* seems to mean a 'true, fixed and permanent home and principal establishment, and to which, whenever he is absent, he has the intention of returning.'") (citation omitted); *In re Estate of Steed*, 152 S.W.3d 797, 803-04 (Tex. App.—Texarkana 2004, pet. denied) ("A person may establish only one domicile, whereas he may have several residences."). The period of time that a decedent resides in a county is irrelevant to the domicile determination "so long as the act and the intention to acquire a domicile coexist." *Maddox*, 677 S.W.2d at 228-29.

At the time of her death, there was evidence that decedent had a residence in Travis County—she was renting an apartment in Austin. The issue then becomes whether she had a coexisting intention to make Austin her permanent home, as distinguished from a temporary residence. *See id.*; *see also Steed*, 152 S.W.3d at 803 ("[L]anguage in the statute referring to 'fixed place of residence' following the word 'domicile' . . . signif[ies] a permanent residence, as distinguished from one which is only temporary.").

As to decedent's intentions, although there was contrary evidence, there was evidence that she never intended Travis County to be her permanent home. Decedent consistently declared in official documents, including her will, voter registration certificates, and income tax returns that

---

It was undisputed that decedent's principal property was in Tom Green County, supporting the trial court's denial of the motion to transfer venue if decedent did not have a domicile or fixed place of residence at the time of her death.

her residential address was in Tom Green County, including during the time period that she was renting an apartment in Austin.[3] There was testimony that she referred to and used her Austin apartment as an "office,"[4] and that she was in "transition"—that she was in Travis County on a temporary basis for health purposes and while she remodeled her "ranch house" in Pecos County.[5]

---

[3] The documentary evidence before the trial court included decedent's will that was executed in 1993, her income tax returns for the years 2000 through 2003, and her voter registration certificates from 1996 and 2005. The physical address that she consistently used was the address of her family's office building in San Angelo.

[4] Decedent's office manager and secretary Rita Whitt averred by affidavit that decedent treated the apartment in Austin as an office for income tax purposes—"100% of the total Austin office apartment rent and office utilities/supplies were deducted on [decedent's] income tax returns [for 2001 to 2003] as a business expense," that decedent treated her motor home as her home for income tax purposes until she sold it in 2002, that decedent did not reinvest in a homestead after she sold her motor home, and that in Whitt's presence, decedent "always referred to her Austin apartment as an *office*, not as a home." The decedent's mother Freda Nutt Hanks averred by affidavit that in decedent's "small, efficiency Austin office," she maintained "duplicate files of what she had in her San Angelo office. The one bedroom in the efficiency apartment was made into her office, and the bed she used when she needed it was actually in a little breakfast nook."

[5] Freda Nutt Hanks averred by affidavit that her daughter did not have a residence at the time of her death and that she did not believe that her daughter "ever called Austin her home":

> [Decedent] stayed in various places, and rented apartments in several states over the years, but they were never her home. For a number of years she had a Winnebago which she could drive and live in, and before that she had another similar travel home. She often referred to these travel homes as her home. I believe that she sold the Winnebago in about 2004, because she was having so much trouble and pain in her back, that she could not manage it. She had four back surgeries, and in the last years of her life sought medical help at numerous places trying to find help for the pain that she endured. . . . If San Angelo was not her domicile, then I would say she was living in transition between homes principally due to major physical and emotional pain. She needed to stay in hotels or motels as much as possible for the convenience of room service.

Decedent's first cousin Warren Nutt averred by affidavit that decedent "loved to live with freedom" and that her favorite place to be was the ranch house. Another cousin Nancy Jo Nutt averred by affidavit that Decedent taught her all of decedent's "systems in her office apartment in

4

Her ranch house remodel included accommodations "to receive a motor home,"[6] and she also had "a wall of the office building [in San Angelo] remodeled so that she could drive her motor home into it like a garage, hook up all utilities, and other conveniences, and use it as her home."[7] This evidence is some evidence that, although decedent had an apartment in Austin, she did not have a coexisting intent to make Austin her permanent home and domicile. *See Maddox*, 677 S.W.2d at 228.

Based on this evidence, the trial court could have concluded that decedent did not have a domicile or fixed place of residence in the state under section 6(a) of the probate code and that venue was proper in Tom Green County under section 6(b) as the county where decedent's principal property was located. *See* Tex. Prob. Code Ann. § 6(a), (b). Tempting as it may be to reweigh the evidence, we may not if we are to serve our standards of review, recognizing the role of the trial court. Because I would conclude that the trial court did not clearly abuse its discretion in its venue ruling, I would deny relator's petition for a writ of mandamus.

---

Austin" so that Nutt would be able to help decedent with her business and decedent "would be free to travel in a new RV home and be at her Pecos county ranch house." Nancy Jo Nutt also averred that decedent would "live in hotels and use room service."

[6] Freda Nutt Hanks also averred that during the three years before her daughter's death that decedent "spent much time and effort" remodeling the ranch house, that she was often at the ranch "supervising the remodeling," and that the remodeling was completed just days before decedent's death. Rita Whitt also averred that decedent had remodeled the Pecos County ranch house to receive a motor home.

[7] Rita Whitt averred that the San Angelo office was designed so that decedent could "park a motor home inside her office's warehouse by means of a large, motorized metal door. She could comfortably and securely live at that location."

5

_____

Jan P. Patterson, Justice

Before Justices Patterson, Puryear and Henson

Filed:   March 28, 2008

6