TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-07-00705-CV






In re Preston Graham






ORIGINAL PROCEEDING FROM TOM GREEN COUNTY



 

D I S S E N T I N G O P I N I O N

 

 In this original proceeding, the majority concludes that the trial court's denial of 
relator Preston Graham's motion to transfer venue from Tom Green County to Travis County was
an abuse of its discretion. The trial court declined to grant relator's motion made 1½ years after the
will had been admitted to probate and only after litigation had erupted. (1) Because the majority
improperly substitutes its judgment for that of the trial court in contravention of well-established
standards of review, I respectfully dissent.

 "In mandatory venue mandamus actions, we look only to whether the trial court
clearly abused its discretion in ruling upon the motion." In re Applied Chem. Magnesias Corp.,
206 S.W.3d 114, 117 (Tex. 2006); Walker v. Packer, 827 S.W.2d 833, 839 (Tex. 1992). "A trial
court clearly abuses its discretion if 'it reaches a decision so arbitrary and unreasonable as to amount
to a clear and prejudicial error of law.'" Walker, 827 S.W.2d at 839 (citation omitted). To be
entitled to mandamus relief, a "relator must establish that the trial court could reasonably have
reached only one decision." Id. at 840.

 An appellate court may not substitute its own judgment for that of the trial court for
matters committed to the trial court's discretion. See Bowie Mem'l Hosp. v. Wright, 79 S.W.3d
48, 52 (Tex. 2002); Walker v. Packer, 827 S.W.2d at 840. "The test for abuse of discretion is not
whether, in the opinion of the reviewing court, the facts present an appropriate case for the trial
court's action. Rather, it is a question of whether the court acted without reference to any guiding
rules and principles." Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985). 
A trial court does not abuse its discretion merely because it decides a discretionary matter differently
than an appellate court would in a similar circumstance. Id. at 242.

 The majority concludes that Travis County, and not Tom Green County, was decedent
Dianne Hanks Graham's domicile at the time of her death, and that, under the mandatory venue
provisions of the Texas Probate Code, the trial court was required to transfer the case to Travis
County. See Tex. Prob. Code Ann. § 6(a) (West 2003). (2) The elements of domicile are actual
residence "coupled with the purpose to make the place of residence one's permanent home." 
Maddox v. Surber, 677 S.W.2d 226, 228 (Tex. App.--Houston [1st Dist.] 1984, no writ) (emphasis
added); see also Snyder v. Pitts, 241 S.W.2d 136, 139 (Tex. 1951) ("The elements of the legal
concept of domicile are: 1. An actual residence-- 2. The intent to make it the permanent home. The
word home seems to mean a 'true, fixed and permanent home and principal establishment, and to
which, whenever he is absent, he has the intention of returning.'") (citation omitted); In re Estate
of Steed, 152 S.W.3d 797, 803-04 (Tex. App.--Texarkana 2004, pet. denied) ("A person may
establish only one domicile, whereas he may have several residences."). The period of time that a
decedent resides in a county is irrelevant to the domicile determination "so long as the act and the
intention to acquire a domicile coexist." Maddox, 677 S.W.2d at 228-29.

 At the time of her death, there was evidence that decedent had a residence in Travis
County--she was renting an apartment in Austin. The issue then becomes whether she had a
coexisting intention to make Austin her permanent home, as distinguished from a temporary
residence. See id.; see also Steed, 152 S.W.3d at 803 ("[L]anguage in the statute referring to 'fixed
place of residence' following the word 'domicile' . . . signif[ies] a permanent residence, as
distinguished from one which is only temporary.").

 As to decedent's intentions, although there was contrary evidence, there was evidence
that she never intended Travis County to be her permanent home. Decedent consistently declared
in official documents, including her will, voter registration certificates, and income tax returns that
her residential address was in Tom Green County, including during the time period that she was
renting an apartment in Austin. (3) There was testimony that she referred to and used her Austin
apartment as an "office," (4) and that she was in "transition"--that she was in Travis County on a
temporary basis for health purposes and while she remodeled her "ranch house" in Pecos County. (5) 
Her ranch house remodel included accommodations "to receive a motor home," (6) and she also had
"a wall of the office building [in San Angelo] remodeled so that she could drive her motor home into
it like a garage, hook up all utilities, and other conveniences, and use it as her home." (7) This evidence
is some evidence that, although decedent had an apartment in Austin, she did not have a coexisting
intent to make Austin her permanent home and domicile. See Maddox, 677 S.W.2d at 228.

 Based on this evidence, the trial court could have concluded that decedent did not
have a domicile or fixed place of residence in the state under section 6(a) of the probate code and
that venue was proper in Tom Green County under section 6(b) as the county where decedent's
principal property was located. See Tex. Prob. Code Ann. § 6(a), (b). Tempting as it may be to
reweigh the evidence, we may not if we are to serve our standards of review, recognizing the role
of the trial court. Because I would conclude that the trial court did not clearly abuse its discretion
in its venue ruling, I would deny relator's petition for a writ of mandamus.

 


 __________________________________________

 Jan P. Patterson, Justice

Before Justices Patterson, Puryear and Henson 

Filed: March 28, 2008


1. Decedent Dianne Hanks Graham's will was admitted to probate in February 2006; relator
initially filed a motion to transfer venue in May 2007; and the hearing on the venue motion was held
in November 2007. At the hearing, the trial court expressed concern with relator's venue motion:


 You said twice in your argument that everybody was fine when you filed--when the
case was filed in Tom Green County. Everybody got along; everybody was in
agreement when it was filed in Tom Green County. The decision to change the
venue only came up when people became out of agreement, and that's concerning to
me, that it was okay and everybody agreed that venue was here as long as everyone
got along. But the minute that there was some issue between parties or beneficiaries,
well, then suddenly it became appropriate at that point to change venue. 


At the time of her ruling, the trial court recognized that the parties had presented conflicting
evidence: "[E]ach side had a lot of information they presented in support of either argument."
2. The probate code provides that if a decedent does not have a domicile or fixed place of
residence in this state, venue is proper in the county in which the decedent died or in the county
where his principal property was at the time of death. See Tex. Prob. Code Ann. § 6(b) (West 2003). 
It was undisputed that decedent's principal property was in Tom Green County, supporting the trial
court's denial of the motion to transfer venue if decedent did not have a domicile or fixed place of
residence at the time of her death.
3. The documentary evidence before the trial court included decedent's will that was executed
in 1993, her income tax returns for the years 2000 through 2003, and her voter registration
certificates from 1996 and 2005. The physical address that she consistently used was the address
of her family's office building in San Angelo.
4. Decedent's office manager and secretary Rita Whitt averred by affidavit that decedent
treated the apartment in Austin as an office for income tax purposes--"100% of the total Austin
office apartment rent and office utilities/supplies were deducted on [decedent's] income tax returns
[for 2001 to 2003] as a business expense," that decedent treated her motor home as her home for
income tax purposes until she sold it in 2002, that decedent did not reinvest in a homestead after she
sold her motor home, and that in Whitt's presence, decedent "always referred to her Austin
apartment as an office, not as a home." The decedent's mother Freda Nutt Hanks averred by affidavit
that in decedent's "small, efficiency Austin office," she maintained "duplicate files of what she had
in her San Angelo office. The one bedroom in the efficiency apartment was made into her office,
and the bed she used when she needed it was actually in a little breakfast nook."
5. Freda Nutt Hanks averred by affidavit that her daughter did not have a residence at the time
of her death and that she did not believe that her daughter "ever called Austin her home":


 [Decedent] stayed in various places, and rented apartments in several states over the
years, but they were never her home. For a number of years she had a Winnebago
which she could drive and live in, and before that she had another similar travel
home. She often referred to these travel homes as her home. I believe that she sold
the Winnebago in about 2004, because she was having so much trouble and pain in
her back, that she could not manage it. She had four back surgeries, and in the last
years of her life sought medical help at numerous places trying to find help for the
pain that she endured. . . .  If San Angelo was not her domicile, then I would say she
was living in transition between homes principally due to major physical and
emotional pain. She needed to stay in hotels or motels as much as possible for the
convenience of room service.


 Decedent's first cousin Warren Nutt averred by affidavit that decedent "loved to live with
freedom" and that her favorite place to be was the ranch house. Another cousin Nancy Jo Nutt
averred by affidavit that Decedent taught her all of decedent's "systems in her office apartment in
Austin" so that Nutt would be able to help decedent with her business and decedent "would be free
to travel in a new RV home and be at her Pecos county ranch house." Nancy Jo Nutt also averred
that decedent would "live in hotels and use room service."
6. Freda Nutt Hanks also averred that during the three years before her daughter's death that
decedent "spent much time and effort" remodeling the ranch house, that she was often at the ranch
"supervising the remodeling," and that the remodeling was completed just days before decedent's
death. Rita Whitt also averred that decedent had remodeled the Pecos County ranch house to receive
a motor home.
7. Rita Whitt averred that the San Angelo office was designed so that decedent could "park
a motor home inside her office's warehouse by means of a large, motorized metal door. She could
comfortably and securely live at that location."