**Petition for Writ of Mandamus Denied in Part, Conditionally Granted in Part, Stay Lifted, and Opinion filed December 14, 2017.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-17-00451-CV

---

## IN RE TRANSCONTINENTAL GAS PIPELINE COMPANY, LLC, THE WILLIAMS COMPANIES, INC., WILLIAMS PARTNERS L.P., AND BLACK MARLIN PIPELINE LLC; FURMANITE CORPORATION, FURMANITE AMERICA, INC., AND FURMANITE WORLDWIDE, INC.; DANOS & CUROLE MARINE CONTRACTORS, LLC; ES&H, INC., AND ENVIRONMENTAL SAFETY & HEALTH CONSULTING SERVICES, INC., Relators

**ORIGINAL PROCEEDING**
**WRIT OF MANDAMUS**
**127th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2015-62416**

## OPINION

On Thursday, June 08, 2017, relators "the Williams Defendants" (Transcontinental Gas Pipeline Company, LLC or "Transco," The Williams Companies, Inc., and Williams Partners L.P.), "the Furmanite Defendants"

(Furmanite Corporation, Furmanite America, Inc., and Furmanite Worldwide, Inc.), "the ES&H Defendants" (ES&H, Inc. and Environmental Safety & Health Consulting Services, Inc.), "Danos" (Danos & Curole Marine Contractors, LLC), and Black Marlin Pipeline LLC ("Black Marlin") filed a petition for writ of mandamus in this Court. *See* TEX. R. APP. P. 52; TEX. GOV'T CODE ANN. § 22.221 (West Supp. 2017). In the petition, the relators ask this Court to compel the Honorable R. K. Sandill, presiding judge of the 127th District Court of Harris County, to vacate its ruling partially denying their respective motions to dismiss for forum non conveniens and to instead grant the motions in their entirety.

We conclude that the trial court did not clearly abuse its discretion in denying the motions to dismiss as they pertain to the claims of real party in interest Paula Rhodes. A trial court is prohibited from dismissing, on the ground of forum non conveniens, the claims of a Texas resident, and the evidence supports the trial court's implied finding that Rhodes continuously resided in Texas at all relevant times, despite a temporary absence from the state. As to the remaining real parties in interest, we conclude that the evidence concerning the factors that must be considered when evaluating a forum non conveniens motion weigh overwhelming in favor of dismissal, and thus, the trial court clearly abused its discretion in denying the motions to dismiss as to those parties. We accordingly deny in part, and conditionally grant in part, the relators' petition for writ of mandamus.

## I. BACKGROUND

This is a personal-injury case arising from an explosion and fire that occurred on October 8, 2015, at Compressor Station 62 in Gibson, Louisiana. The Station 62 facility receives unprocessed natural gas via pipeline from numerous offshore

2

producers in the Gulf of Mexico. The incident occurred during a scheduled maintenance and clean-out of the slug catcher, which separates the incoming gas and liquids on site.

During the maintenance project, the facility was shut down and the slug catcher was isolated from hazardous vapors so that sludge accumulating inside the 42-inch diameter "liquids distribution header" could be removed. In preparation for the work, Transco employees prepared a Gas Handling Plan to isolate the structure. The Gas Handling Plan called for depressurization and draining of the gas and liquids in the slug catcher, followed by installation of air movers to purge it with fresh air. The Gas Handling Plan was based on the plan used during the last scheduled maintenance in 2010 and had been modified to address a change in the work scope that included replacement of a three-inch water dump line flange on the west end of the header. The work plan for the repairs themselves was a new plan, and it called for the use of inflatable bladders to isolate the header during "hot work" around the flange faces and the use of a plumbers plug at the site of the flange replacement. Subcontractor Danos was to assist with the cleaning and flange replacement, and it had further subcontracted some of the work, such as installing the bladders, with one of the Furmanite Defendants.

On the night of October 7, 2015, Transco operations supervisor John Turchin emailed personnel at Williams, Danos, and ES&H about the status of the project. He stated that the south header had been cleaned and that air bladders had been installed to the work on the flange needing repair. He added that a three-inch flange on the east end of the header was inspected and found to have excessive corrosion, and that the flange would be replaced the next day.

3

When a Danos welder struck an arc at the site of the three-inch flange on the east side of the header the next morning, vapors inside the header ignited. The explosion ejected the bladders, which struck and killed Danos employees Samuel Brinlee and Casey Ordoyne. Furmanite employee Jason Phillippe died from injuries sustained in the ensuing fire. Danos employees Wayne Plaisance Jr. and Walter Kidder survived their injuries.

The incident was investigated by the U.S. Department of Transportation's Pipelines and Hazardous Materials Safety Administration ("PHMSA"), among others. Transco, the owner and operator of the facility, performed its own investigation described in its "Root Cause Analysis." Both PHMSA and Transco concluded that the reliance on an earlier Gas Handling Plan and the placement of air movers and inflatable bladders had resulted in an insufficient purge of hazardous vapors from the work areas.

A dozen wrongful-death and personal-injury suits were filed in Terrebonne Parish, Louisiana, where the incident occurred. Those suits were consolidated for discovery and trial. This suit, however, was filed in Harris County, Texas, by the following plaintiffs:[1]

1. Louisiana resident Wayne Plaisance Jr., who seeks damages for his personal injuries;

---

[1] Although Plaisance and Richard Brinlee intervened in the case, they are "plaintiffs" as that term is defined in the forum non conveniens statute. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 71.051(h)(2) (West Supp. 2017).

4

2. Louisiana resident Walter Kidder, who seeks damages for his personal injuries;

3. Louisiana resident Judy Ordoyne, who seeks damages for the death of her son, Louisiana resident Casey Ordoyne;

4. North Carolina residents Kristine Phillippe, Nash Phillippe, Knox Phillippe, Memphis Phillippe, Susan White, and Albert White, and Illinois resident Michael Phillippe, all of whom seek damages for the death of Illinois resident Jason Phillippe;

5. Louisiana resident Richard Brinlee, who seeks damages for the death of his son, Louisiana resident Samuel Brinlee;

6. Samuel Brinlee's mother Paula Rhodes, whose residency is disputed, and who seeks damages for his death; and

7. Samuel Brinlee's daughter, Illinois resident Alisa Evans, who seeks damages for her father's death.

The defendants moved to dismiss the case pursuant to the Texas forum non conveniens statute. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 71.051 (West Supp. 2017). After initially granting their respective motions, the trial court emailed questions to the parties about the residency of plaintiff Paula Rhodes. Before the parties responded, the trial court vacated the order granting the motions to dismiss and set a "status conference." At the status conference, the parties presented further argument for and against the motions to dismiss. The trial court then denied the

motions to dismiss as to all plaintiffs except Alisa Evans.[2]  The relators, defendants, below, ask us to compel the trial court to grant their motions as to the remaining plaintiffs.  We stayed further proceedings pending our decision on the merits.

## II.  ISSUES PRESENTED

The relators argue that the trial court abused its discretion in changing its original order granting their motion to dismiss for forum non conveniens, because (1) Rhodes's move to Texas after the forum non conveniens motion was filed is not grounds for maintaining any plaintiff's action in Texas, (2) the evidence relevant to the factors to be considered in deciding the motion weighs overwhelmingly in favor of the dismissal of each plaintiff's action, and (3) the trial court changed its initial ruling without new arguments or evidence.[3]

## III.  STANDARD OF REVIEW

To obtain mandamus relief, a relator generally must demonstrate that the trial court clearly abused its discretion and that the relator has no adequate remedy by appeal.  *See In re Reece,* 341 S.W.3d 360, 364 (Tex. 2011) (orig. proceeding).  Under this standard of review, we defer to the trial court's factual determinations that are supported by evidence, but we review the trial court's legal determinations de novo. *See In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 643 (Tex. 2009) (orig. proceeding).  A trial court clearly abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law, or if it clearly fails to analyze the law correctly or apply the law correctly to the facts.  *See*

---

[2] Evans had a similar suit pending in Louisiana.

[3] We have reordered the relators' issues.

6

*In re Cerberus Capital Mgmt. L.P.*, 164 S.W.3d 379, 382 (Tex. 2005) (orig. proceeding) (per curiam). If the trial court abuses its discretion in denying a forum non conveniens motion, the movant has no adequate remedy by appeal. *See In re Gen. Elec. Co.*, 271 S.W.3d 681, 685 (Tex. 2008) (orig. proceeding); *In re Pirelli Tire, L.L.C.*, 247 S.W.3d 670, 679 (Tex. 2007) (orig. proceeding) (plurality op.).

In personal-injury and wrongful-death actions, forum non conveniens motions are governed by Texas Civil Practice and Remedies Code section 71.051. Under the statute, the level of deference afforded to a plaintiff's choice of forum depends upon whether the plaintiff is a Texas resident. Claims of a Texas resident, or of a derivative claimant of a Texas resident, may not be dismissed on the ground of forum non conveniens. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 71.051(e). If the plaintiff is not a Texas resident, or a derivative claimant of a Texas resident, then the court applies a six-factor test in determining whether to grant a motion to stay or dismiss the claim or action. *Id.* § 71.051(b). In applying the forum non conveniens factors, "[a] trial court has no discretion in determining what the law is or in applying the law to the particular facts." *In re Mantle Oil & Gas, LLC,* 426 S.W.3d 182, 187 (Tex. App.—Houston [1st Dist.] 2012, orig. proceeding). Where, as here, no findings of fact and conclusions of law were issued or requested as to the portion of the trial court's ruling partially denying the motion, we imply all factual findings in support of the trial court's ruling if such findings are supported by the record.[4]

---

[4] The forum non conveniens statute requires specific findings of fact and conclusions of law if the trial court grants the motion to stay or to dismiss, but not if the trial court denies the motion. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 71.051(f). The trial court made such findings only as to its dismissal of Alisa Evans's claims, and that portion of the ruling has not been challenged.

## IV. CLAIMS OF PURPORTED TEXAS RESIDENT PAULA RHODES

Paula Rhodes asserted in her live pleading that she is a Texas resident, and she asserted claims arising from the death of her son, Louisiana resident Samuel Brinlee. According to the relators, the trial court clearly abused its discretion in denying their motion to dismiss her claims because (a) Rhodes is a derivative claimant, and thus, it is her son's residency that matters rather than her own; and (b) she was not a Texas resident at any time relevant to the forum non conveniens analysis.

### A. The Trial Court Properly Considered Rhodes's Residency

According to the relators, the trial court could consider only Rhodes's deceased son's residency when determining whether the statute prohibited the trial court from dismissing her claims on the ground of forum non conveniens. This argument concerns the proper construction of Texas Civil Practice and Remedies Code section 71.051. The construction of a statute is a question of law, which we review de novo. *See TIC Energy & Chem., Inc. v. Martin*, 498 S.W.3d 68, 74 (Tex. 2016). Our goal in construing a statute is to give effect to the legislature's intent as expressed in the statute's language. *See id.* A statute's clear and unambiguous language is determinative of the legislature's intent. *See id.* If the statute defines a term, then we must construe the statute using the definition supplied by the legislature and take into account any technical or particular meaning the words have acquired. *See Harris Cty. Appraisal Dist. v. Tex. Workforce Comm'n*, 519 S.W.3d 113, 128 (Tex. 2017). If the statue does not supply a term's definition, then we must "determine a term's plain or ordinary meaning," unless a different meaning is

8

apparent from the statute's language. *Id.* at 128–29 (quoting *Wal-Mart Stores, Inc. v. Forte*, 497 S.W.3d 460, 471 (Tex. 2016)).

Under the forum non conveniens statute, "[t]he court may not stay or dismiss a plaintiff's claim . . . if the plaintiff is a legal resident of this state *or* a derivative claimant of a legal resident of this state." TEX. CIV. PRAC. & REM. CODE ANN. § 71.051(e) (emphasis added). Because Paula Rhodes seeks recovery of damages for the wrongful death of her son, she is both a "plaintiff" and a "derivative claimant" as those terms are used in the statute. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 71.051(h)(2) (defining "Plaintiff" as "a party seeking recovery of damages for personal injury or wrongful death"); *id.* § 71.051(h)(1) (defining "Derivative claimant" as "a person whose damages were caused by personal injury to or the wrongful death of another").

In stating the grounds on which a trial court is prohibited from dismissing a plaintiff's claim for forum non conveniens, the statute uses the disjunctive "or," which means that the terms that precede and follow it are alternatives. *See City of Dallas v. TCI W. End, Inc.*, 463 S.W.3d 53, 58 (Tex. 2015) (per curiam) ("The statute's use of 'or,' a disjunctive, identifies two alternative bases . . . ."). Thus, the trial court is barred from dismissing a plaintiff's claims if the plaintiff is *either* (1) a legal resident of this state, *or* (2) a derivative claimant of a legal resident of this state. Under the statute's unambiguous language, the trial court could not dismiss Rhodes's claims if either she or her son was a legal resident of this state. The trial court therefore did not clearly abuse its discretion in considering Rhodes's residency.

9

**B.    The Trial Court's Determination of Rhodes's Residency is Supported by the Evidence.**

The relators next contend that the trial court abused its discretion in determining that Rhodes is a Texas resident. The relators rely on evidence that Rhodes was living in Illinois when the incident occurred, when she joined the suit, and even when the relators' motions to dismiss were filed, but moved to Texas before the trial court heard and ruled on the motions. The relators argue that the trial court erroneously determined Rhodes's residency as of the time the trial court ruled on the motion, and that the trial court instead should have relied on Rhodes's residency as of the date the incident occurred or the date she joined the lawsuit.

We need not determine which date should be used in determining a plaintiff's residency because there is evidence that Rhodes was continuously a Texas resident from at least July 2012—more than three years before the incident. We arrive at this conclusion based on the meaning of the term "legal resident" in the forum non conveniens statute.

The statute prohibits dismissal of a plaintiff's claims on forum non conveniens grounds if the plaintiff is a "legal resident" of Texas. When the forum non conveniens statute was first enacted in 1993, it defined "legal resident" as "a person who intends the specified political subdivision to be his permanent residence and who intends to return to the specified political subdivision despite temporary residence elsewhere or despite temporary absences, without regard to the person's country of citizenship or national origin." Act of Feb. 23, 1993, 73d Leg., R.S., ch. 4, § 1, sec. 71.051(j)(1), 1993 TEX. GEN. LAWS 10, 12. The definition of "legal resident" was deleted from the statute less than four months before the incident at

Station 62.  *See* Act of May 22, 2015, 84th Leg., R.S., ch. 537, § 1, sec. 71.051(h)(1), 2015 TEX. GEN. LAWS 1918, 1918.

Because the statute no longer defines "legal resident," "the common, ordinary meaning of the term applies unless a contrary meaning is apparent from the statute's language or the common meaning would lead to absurd or nonsensical results." *Harris Cty. Appraisal Dist.*, 519 S.W.3d at 121–22 (citing TEX. GOV'T CODE ANN. § 311.011(a) (West 2013) ("Words and phrases shall be read in context and construed according to the rules of grammar and common usage.")).   When ascertaining the meaning of a statute's undefined terms, "we typically look first to their dictionary definitions and then consider the term's usage in other statutes, court decisions, and similar authorities."  *Id.* at 129 (quoting *Tex. State Bd. of Exam'rs of Marriage & Family Therapists v. Tex. Med. Ass'n*, 511 S.W.3d 28, 35 (Tex. 2017)).

Black's Law Dictionary defines "legal" as "[c]onforming to the law; according to law; required or permitted by law; not forbidden or discountenanced by law; good and effectual in law; of or pertaining to the law; lawful."  *Legal*, BLACK'S LAW DICTIONARY (6th ed. 1990).  The New Oxford American Dictionary similarly defines "legal" as "permitted by law."  NEW OXFORD AMERICAN DICTIONARY 997 (Angus Stevenson & Christine Lindberg eds., 3d ed. 2010).

Black's Law Dictionary defines "resident" in part as

Any person who occupies a dwelling within the State, has a present intent to remain within the State for a period of time, and manifests the genuineness of that intent by establishing an ongoing physical presence within the State together with indicia that his presence within the State is something other than merely transitory in nature.

*Resident*, BLACK'S LAW DICTIONARY. Here, too, this legal definition parallels the common meaning of the word, for the New Oxford American Dictionary similarly defines "resident" as "a person who lives somewhere permanently or on a long-term basis." NEW OXFORD AMERICAN DICTIONARY 1485.

The word "resident" also can be used to refer to a person whose stay is temporary. *See Brown v. Boulden*, 18 Tex. 431, 433 (1857) ("A residence is generally transient in its nature."). Black's Law Dictionary accordingly includes the following in its definition of "resident": "The word 'resident' when used as a noun, means a dweller, habitant or occupant; one who resides or dwells in a place for a period of more *or less*, duration; it signifies one having a residence, or one who resides and abides." *Resident*, BLACK'S LAW DICTIONARY (emphasis added).

Because "resident" may refer to a person having a lasting or a temporary residence, a person can have more than one residence. *See Snyder v. Pitts*, 150 Tex. 407, 413, 241 S.W.2d 136, 139 (1951). A person "may well live temporarily in one place while maintaining his residence at another." *Malnar v. Mechell*, 91 S.W.3d 924, 928–29 (Tex. App.—Amarillo 2002, no pet.) (citing *Owens Corning v. Carter*, 997 S.W.2d 560, 571 (Tex. 1999)).

Whether Rhodes became an Illinois resident during her stay there or whether she instead continued to be a Texas resident who was only temporarily absent from the state is "a question of intent to be proved by declarations and acts." *Snyder*, 150 Tex. at 416, 241 S.W.2d at 141; *see also Malnar*, 91 S.W.3d at 928.

Rhodes produced evidence sufficient for the trial court to reasonably find that she has been a legal resident of Texas since 2012 and was only temporarily absent from the state for an eleven-month period. She testified by affidavit that she moved

into her daughter's home in Humble, Texas in July 2012. Rhodes stated that she traveled annually to Illinois to visit her mother, and that she noticed a decline in her mother's health in 2014. Rhodes traveled to Illinois in April 2015 to care for her mother. According to Rhodes, "My intention was to take care of my mother for a period of time and then return to Texas to be with my children," three of whom live in Texas.

Rhodes further explained that she injured her shoulder on her first day in Illinois, and that the injury required surgical repair. She was living at her mother's house in Illinois while awaiting surgery when her son was killed in the Station 62 incident on October 8, 2015. Rhodes attested that, due to her mother's worsening health, her own shoulder injury, and the stress related to her son's death, she "temporarily relocated" to an apartment she rented in Urbana, Illinois. According to her discovery responses, that move occurred on November 12, 2015. While awaiting surgery, Rhodes apparently decided not to return to her daughter's house in Humble, Texas, because Rhodes attested that she rented an apartment in Houston on January 5, 2016, although she was still in Illinois at that time. Two weeks later, Rhodes underwent surgery in Illinois, and on March 1, 2016, Rhodes returned to Texas and began living in the apartment she had rented.

Rhodes continued to use her Texas driver's license while she was in Illinois, and the use of a Texas driver's license is some evidence that the person is a legal resident of Texas. *Cf.* TEX. TRANSP. CODE ANN. §§ 521.142, 521.1425–.1427 (West 2013 & Supp. 2017); *see also Fernández v. Bustamante*, 305 S.W.3d 333, 343 (Tex. App.—Houston [14th Dist.] 2010, no pet.). On the other hand, Rhodes registered her car in Illinois and rented an apartment there. Registering a car is evidence of

13

residence, *see Fernández*, 305 S.W.3d at 343, as is renting a place to live. *See Ex parte Blumer*, 27 Tex. 734, 743 (1865). Rhodes also worked in Illinois during her time there.

Although the evidence is conflicting, the trial court reasonably could conclude that Rhodes maintained her Texas residency during her absence from the state. Although Rhodes temporarily lived in Illinois from April 2015 through February 2016, she had a specific reason for traveling to Illinois, and she extended her stay while awaiting surgery. Rhodes's testimony that she intended to be absent from the state for only a limited time is supported by the evidence that she rented an apartment in Texas even while she continued to live in a rented apartment in Illinois. *See, e.g.*, *Mills v. Bartlett*, 375 S.W.2d 940, 943 (Tex. App.—Tyler 1964) (a witness's testimony about the witness's intentions can be considered by the factfinder), *aff'd*, 377 S.W.2d 636 (Tex. 1964); *Allison v. Allison*, 373 S.W.2d 862, 863 (Tex. Civ. App.—Eastland 1963, no pet.) (implied finding that doctor continued to be a Texas resident while living and working in Arkansas for over two years as "a resident surgeon" was sufficiently supported by doctor's testimony that he considered his absence temporary and he "primarily intended to return to Texas"). Thus, the trial court reasonably could conclude that Rhodes had two residences from April 2015 to March 2016, and that she continued to be a "legal resident" of Texas even while she temporarily resided in Illinois. The trial court accordingly did not clearly abuse its discretion in denying the motion to dismiss as to Rhodes on the ground that she has been a legal resident of this state continuously since before the incident.

## V. CLAIMS MADE BY, AND DERIVED FROM, NON-RESIDENTS

The remaining real parties in interest do not purport to be Texas residents or derivative claimants of Texas residents. The statute prescribes the following test for determining whether the claims of such nonresident plaintiffs should be dismissed for forum non conveniens:

(b) If a court of this state, on written motion of a party, finds that in the interest of justice and for the convenience of the parties a claim or action to which this section applies would be more properly heard in a forum outside this state, the court shall decline to exercise jurisdiction under the doctrine of forum non conveniens and shall stay or dismiss the claim or action. In determining whether to grant a motion to stay or dismiss an action under the doctrine of forum non conveniens, the court shall consider whether:

 (1) an alternate forum exists in which the claim or action may be tried;

 (2) the alternate forum provides an adequate remedy;

 (3) maintenance of the claim or action in the courts of this state would work a substantial injustice to the moving party;

 (4) the alternate forum, as a result of the submission of the parties or otherwise, can exercise jurisdiction over all the defendants properly joined to the plaintiff's claim;

 (5) the balance of the private interests of the parties and the public interest of the state predominate in favor of the claim or action being brought in an alternate forum, which shall include consideration of the extent to which an injury or death resulted from acts or omissions that occurred in this state; and

(6)    the stay or dismissal would not result in unreasonable duplication or proliferation of litigation.

. . . .

(e)    . . . . The determination of whether a claim may be stayed or dismissed under Subsection (b) shall be made with respect to each plaintiff without regard to whether the claim of any other plaintiff may be stayed or dismissed under Subsection (b) and without regard to a plaintiff's country of citizenship or national origin. If an action involves both plaintiffs who are legal residents of this state and plaintiffs who are not, the court shall consider the factors provided by Subsection (b) and determine whether to deny the motion or to stay or dismiss the claim of any plaintiff who is not a legal resident of this state.

TEX. CIV. PRAC. & REM. CODE ANN. § 71.051(b), (e). The word "shall" in the statute "requires dismissal of the claim or action if the statutory factors weigh in favor of the claim or action being more properly heard in a forum outside Texas." *In re ENSCO Offshore Int'l Co*., 311 S.W.3d 921, 924 (Tex. 2010) (orig. proceeding). Section 71.051 does not require proof of every statutory factor nor must every factor weigh in favor of dismissal for the movant to be entitled to relief. *See In re Gen. Elec. Co*., 271 S.W.3d at 687. The statute requires only that the trial court consider the factors to the extent that they apply. *See id.* Where evidence is needed to support the parties' respective positions, "the trial court must base its findings and decision on the weight of the evidence, and certainly is entitled to take into account the presence or absence of evidence as to some issue or position of a party." *Id.*

The non-resident real parties in interest concede that their claims may be tried in Louisiana and that Louisiana courts provide an adequate remedy and can exercise jurisdiction over all of the defendants. They further agree that dismissing the Texas

16

action would not result in unreasonable duplication or proliferation of litigation. Thus, Factors 1, 2, 4, and 6 conclusively favor dismissal. The parties dispute only whether Factors 3 and 5 favor dismissal or retention of the case in Texas.

In determining the extent to which to grant the motions to dismiss, if at all, a court is required to consider the six factors as applied to each nonresident plaintiff, without regard to whether the claim of any other plaintiff may be stayed or dismissed. In many instances, however, the evidence of a particular factor is the same for all of the nonresident plaintiffs. When that is the case, we will not repeat the discussion as to each plaintiff. Where there is different or additional evidence that is specific to a particular nonresident plaintiff, we identify that plaintiff and consider that evidence only in connection with that party.

## A.    Factor 3:  Substantial Injustice to the Moving Party

In determining whether maintenance of the claim or action in the courts of this state would work a substantial injustice to the moving party, we consider whether the majority of witnesses, or key witnesses, are or are not subject to compulsory process in Texas. *See ENSCO*, 311 S.W.3d at 925. We also consider whether maintaining the action in Texas would prevent the tort claims against the movant and the movant's claims for indemnity from being litigated in the same trial. *See id.* The real parties in interest additionally contend that courts should consider whether contracts between the defendants contain Texas choice-of-law and Texas choice-of-forum or choice-of-venue provisions.

### 1. Is there a lack of compulsory process in Texas for reaching the witnesses?

To determine whether compulsory process was available in Texas for a majority of the witnesses, the trial court asked the parties to identify the number of their witnesses in Texas and those outside Texas. The plaintiffs produced a list of witnesses, and the defendants relied on their affidavits and responses to disclosures.

After examining a list prepared by the plaintiffs and the affidavits and disclosures by the Williams Defendants, Black Marlin, the ES&H Defendants, and Danos,[5] the potential witnesses that are not specific to a particular plaintiff appear to include approximately

- 35 people employed by a defendant in Texas;

- 9 third-party investigators in Texas;

- 47 people employed by a defendant outside of Texas;

- 9 employees of a defendant for whom no address was found in the record;[6]

- 8 former employees of a defendant with a last known address outside of Texas; and

- 70 investigators, first-responders, or on-site third-party contractors outside of Texas.

---

[5] The Furmanite Defendants' disclosures are not in the record.

[6] These are Furmanite employees Nicholas Wright, Bryan Spears, Mike Matthews, and Billy Moore, and Danos employees Brandt Griffin, Curtis Danos, Ray Price, Jeffery Knight, and David Lackey.

The overwhelming majority of the potential witnesses are outside of Texas, including five of the seven people who conducted the Root Cause Analysis and fourteen of the sixteen people interviewed by PHMSA. Most of the witnesses who are outside of Texas are not subject to a party's control.

The nonresident plaintiffs do not dispute that most of the witnesses are outside of Texas, but instead state that the defendants have not explained why they would need the testimony of Louisiana "routine fact witnesses" at trial. We do not agree that they were required to do so. As the Texas Supreme Court stated in *In re General Electric Co.*, "[D]etail regarding which witnesses would be called and what evidence would be unavailable is not necessary in a case such as this where the practical problems of trying a personal injury case hundreds of miles from the scene of the occurrence, the place where the lay witnesses reside, and where most other evidence is located is manifest." 271 S.W.3d 681, 691 (Tex. 2008) (orig. proceeding).

The real parties in interest contend that "[k]ey witnesses are plainly the Williams personnel who received Mr. Turchin's crucial pre-explosion email in Houston but failed to take the action required by Williams policies to stop the work until any potential hazards could be identified." *See In re Pirelli Tire, LLC*, 247 S.W.3d at 678 (granting forum non conveniens motion where "[k]ey evidence and witnesses concerning damages are in Mexico," including "the only witness to the accident," "the accident investigators and all medical personnel" and "[t]he witnesses most likely to be familiar with the condition and maintenance of the truck and the tire"). The plaintiffs apparently contend that Turchin's email was crucial because it was Turchin who decided to add to the schedule the work on the three-inch flange on the east side of the south header—but Turchin, Station 62's former

19

Operations Supervisor, is no longer employed by a defendant, and his last known address is in Louisiana. In addition, Station 62's Engineering Manager, Operations Manager, and Safety Specialist at the time of the incident all live in Louisiana. The eyewitnesses to the accident are not in Texas, nor are most damage witnesses.

The plaintiffs have identified as "key witnesses" only those witnesses most concerned with errors or omissions allegedly committed by one or more of the Williams Defendants in Houston, but that is not the only matter in dispute. There are seven other defendants and the extent of each defendant's liability, if any, has been put at issue. The defendants may wish to rely on the testimony of the many Louisiana third-party contractors, first responders, and investigators in litigating proportionate responsibility. And, if the plaintiffs prevail, damages also will have to be determined.

The issue of damages brings us to the witnesses that are specific to a particular real party in interest. Each nonresident plaintiff also is a key witness in his or her own case. Although none of them are in Texas, they have submitted themselves to the court's jurisdiction and can be compelled to attend a trial in Texas. The same is not true of their family members, who also may be witnesses on the subject of damages, and these people are outside the reach of a Texas court. Regarding the personal-injury claimants, Walter Kidder has seen 16 medical providers, only one of which is in Texas. Wayne Plaisance Jr. has seen nine medical providers, and again, only one of them is in Texas.

That the great majority of witnesses are not subject to compulsory service in Texas does not necessarily mean, however, that dismissal would deprive the nonresident plaintiffs of the opportunity to obtain evidence from the "key witnesses"

20

currently employed in Texas by one of the Williams Defendants. Under the forum non conveniens statute, "The court may set terms and conditions for staying or dismissing a claim or action under this section as the interests of justice may require, giving due regard to the rights of the parties to the claim or action." TEX. CIV. PRAC. & REM. CODE ANN. § 71.051(c). The trial court therefore has the discretion to condition dismissal on each defendant's agreement that if the defendant could have been compelled to produce a particular witness in the Texas suit, the defendant will produce the witness in a suit in another state, subject to the same objections that the defendant could have raised to the witness's production in Texas.

These considerations weigh in favor of dismissal.

### 2. *Would litigation in Texas prevent the movants' claims for indemnity from being resolved in one trial?*

The real parties in interest point out that contracts between some of the relators contain indemnification provisions and that the same contracts contain Texas choice-of-law and Harris County choice-of-venue provisions. It is true that one circumstance to be considered in analyzing the substantial-injustice factor is whether maintaining the action in Texas would prevent a defendant's claim for indemnity from being resolved in one trial. For example, in *In re ENSCO Offshore Int'l Co.*, ENSCO asserted that a substantial injustice would result from litigating the plaintiffs' claims in Texas because ENSCO had an indemnity suit pending in Australia against a company that was not subject to jurisdiction in Texas. *See In re ENSCO Offshore Int'l Co.*, 311 S.W.3d at 925. The Texas Supreme Court agreed that this was a fact favoring dismissal because it would be more convenient to resolve liability and indemnity in a single trial.

21

Here, counsel for Danos represented to the trial court that a Williams Defendant had brought an indemnity claim against Danos in Terrebonne Parish, Louisiana—the same place where all of the other personal-injury and wrongful-death suits arising from the incident were filed—and that Danos has not objected to venue there. Because the record shows that the only pending indemnity claim is being litigated in Louisiana, this circumstance weighs in favor of dismissal.

### 3.    *Other considerations*

The plaintiffs contend that maintaining the suit in Texas would not be substantially unjust to the relators but instead would be just and convenient because several contracts between or among some relators contain exclusive-venue provisions specifying that certain claims between those parties must be brought in Harris County, Texas. But the question is not whether it would be substantially unjust to those defendants for a Texas court to preside over claims governed by the contracts; the question is whether it would be substantially unjust to the defendants for a Texas court to preside over the claims asserted in this case. The distinction is an important one because the question of substantial injustice depends in large measure on the ability to compel witnesses to testify, whether by deposition or at trial, and to produce evidence within the witnesses' control. The identity, number, and location of the witnesses and evidence depends on the nature of the claim. Agreements between some defendants that no substantial injustice or inconvenience would result from litigating certain claims between them in Harris County does not foreclose the possibility that litigating other claims by different parties here would have such effects.

The nonresident plaintiffs also state that the relators have cited no decision in which a Texas court has held that it would be an injustice to require a company to defend itself in its home forum. We disagree. The relators cite *In re ENSCO Offshore Int'l Co.*, in which the Texas Supreme Court stated, "[T]he fact that the trial court has jurisdiction over the defendants because their offices are in Dallas is a separate issue from whether the case should be dismissed on forum non conveniens grounds." *In re ENSCO Offshore Int'l Co.*, 311 S.W.3d at 927. The relators also cite *In re BPZ Resources, Inc.*, in which we rejected the same suggestion that the nonresident plaintiffs make now, namely, that it cannot be unjust to require a company to defend itself in its home forum. *See In re BPZ Res., Inc.*, 359 S.W.3d 866, 875 (Tex. App.—Houston [14th Dist.] 2012, orig. proceeding) (although the "[r]eal parties respond[ed] to relators' argument by asserting that it is not inconvenient for relators to defend this suit in their home jurisdiction," we nevertheless held that "[t]he lack of compulsory process in Texas for reaching the great majority of witnesses would be substantially unjust"). We conclude that the contractual provisions cited by the real parties in interest do not weigh for or against dismissal.

After considering these contracts, and, as to each nonresident real party in interest, the extent to which the witnesses are subject to compulsory process in Texas and whether maintaining the action in Texas would prevent that party's claims from being resolved in the same suit as the defendants' indemnity claims, we conclude that Factor 3 weighs in favor of dismissal.

**B.	Factor 5: Balance of the Parties' Private Interests and the State's Public Interest**

We next consider whether the balance of the parties' private interests and the state's public interest predominate in favor of the nonresident plaintiffs' claims being brought in an alternate forum. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 71.051(b)(5). This factor also requires us to consider "the extent to which an injury or death resulted from acts or omissions that occurred in this state." *Id.*

There seems to be no disagreement that the explosion was the result of performing "hot work" on a header that had been insufficiently purged of, or isolated from, hazardous vapors. The real parties in interest maintain that this situation developed because of alleged errors and omissions by the Williams Defendants' Houston employees. For the purpose of this discussion, we presume, without deciding, that the three Williams Defendants made decisions in Houston that were a legal cause of the explosion; however, those decisions would be a more remote cause of the incident than the events that transpired in Louisiana. *See BPZ Res.*, 359 S.W.3d at 880. For example, the nonresident plaintiffs contend that Williams employees in Texas received John Turchin's email on the night of October 7, 2015 stating that a corroded three-inch flange would be replaced the following day, and that the Texas employees could have stopped the work from going forward. The decision to add the work, however, was made in Louisiana by Turchin (a Louisiana resident who cannot be reached by compulsory process in Texas).

Moreover, the three Williams Defendants are only three of the ten defendants in this case. The real parties in interest do not contend that any of the remaining defendants caused their damages by an act that the defendant performed, or failed to

24

perform, in Texas. Danos, the Furmanite Defendants, and the ES&H Defendants performed their work in Louisiana.[7] Thus, the defendants' tortious acts and omissions, if any, must have occurred in Louisiana as well as in Texas.

### 1.    *Private-interest factors*

Private-interest factors include "the ease of access to proof, the availability and cost of compulsory process, the possibility of viewing the premises, if appropriate, and other practical problems that make trial easy, expeditious, and inexpensive." *See In re Gen. Elec. Co.*, 271 S.W.3d at 691 (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S. Ct. 839, 91 L. Ed. 1055 (1994)).

### a.    **Is there a lack of ease of access to proof in Texas?**

The nonresident plaintiffs primarily argue that access to proof in Texas is not impaired because key liability witnesses are located in Texas. They also state that photographic evidence of the critical facilities at Station 62 make visual evidence accessible in Texas, and documents collected from Station 62 are stored on a shared drive accessible anywhere.

That documents can be sent or emailed "does not cure the problems and difficulties posed by the lack of compulsory process to secure production of the documents and other evidence." *ENSCO*, 311 S.W.3d at 926 (citing *In re Gen. Elec.*, 271 S.W.3d at 691). Because the majority of witnesses cannot be reached by compulsory process in Texas, we can assume that those witnesses' documents and

---

[7] Defendant Black Marlin's role in the events that are the subject of this suit is not identified in the record or in the parties' briefs, so its connection to Texas or Louisiana is unknown.

photographs also cannot be reached.  These circumstances weigh in favor of dismissal.

### b.    Is compulsory process costly or unavailable in Texas for the majority of witnesses?

As previously discussed, the record before us indicates that compulsory process is not available in Texas for the majority of witnesses.  This weighs in favor of dismissal.

### c.    Are there are other practical problems in Texas that interfere with making the trial easy, expeditious, and inexpensive?

In considering whether there are other practical problems that would make one forum easier, more expeditious, and less expensive than another, we consider circumstances such as the location of the physical evidence and the cost of transporting witnesses. *See ENSCO*, 311 S.W.3d at 926.

The physical evidence is stored in Louisiana.  A majority of the potential witnesses are outside of Texas, and most of them are in Louisiana.  Further, the dozen other lawsuits arising from this incident have been consolidated in Louisiana, so that litigating the nonresident plaintiffs' claims in Louisiana would be much more efficient than litigating them in Texas.  These circumstances all weigh strongly in favor of dismissal.

### d.    Does litigating in Texas prevent the possibility of viewing the premises, if appropriate?

Because Station 62 is in Louisiana, litigating in Texas prevents the possibility of viewing the premises.  This weighs in favor of dismissal.

After examining each of the private-interest considerations, we conclude that they weigh in favor of dismissal.

## 2.    *Public-interest factors*

Public-interest factors to be considered include (a) administrative difficulties related to court congestion, (b) burdening with jury duty the people of a community having no relation to the litigation, (c) local interest in having localized controversies decided at home, and (d) trying a case in the forum that is at home with the law that governs the case. *See In re Gen. Elec. Co.*, 271 S.W.3d at 691 (citing *Gulf Oil*, 330 U.S. at 508–09, 67 S. Ct. 839, 91 L. Ed. 1055).

### a.    Are there are administrative difficulties related to court congestion?

The parties produced no evidence concerning court congestion.

### b.    Will litigating the nonresident plaintiffs' claims in Texas burden with jury duty the people of a community having no relation to the litigation?

Transco's principal place of business is in Houston, Texas. The plaintiffs allege that the Williams Companies, Inc., the Furmanite Defendants, and the ES&H Defendants also maintain their principal places of business in Texas. The plaintiffs further allege that their damages were caused by the acts and omissions of the Williams Defendants' employees in Texas. It therefore cannot be said that the people of Texas have no relation to the litigation. This weighs against dismissing the nonresident plaintiffs' claims.

### c. Will litigating the nonresident plaintiffs' claims elsewhere satisfy a local interest in having localized controversies decided at home?

We consider whether litigating a case in particular location will satisfy a local interest because "[i]n cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only." *In re Pirelli Tire*, 247 S.W.3d at 677 (quoting *Gulf Oil*, 330 U.S. at 509, 67 S. Ct. 839, 91 L. Ed. 1055). We therefore consider whether non-parties have an interest in the case. *See ENSCO*, 311 S.W.3d at 927.

The record shows that the events of this case have touched the affairs of many people in Louisiana. The responses to requests for disclosure show that the Louisiana State Police, the Louisiana State Fire Marshall, the Louisiana State Department of Environmental Quality, and the Louisiana Governor's Office of Homeland Security all responded to the emergency, as did the Bayou Cane Fire Protection District, the Terrebonne Parish Fire Protection District, and the Houma City Fire Department. Volunteers from the Coteau, Bayou Black, West Terrebonne, and St. John Volunteer Fire Departments also responded to Station 62.

Local residents who were not responding to the emergency also felt its effects: the PHMSA report states that the incident, which occurred at around 11:00 a.m., caused the closure of Highway 182 for over twelve hours. A report prepared for the EPA states that "[a]pproximately 340 people live within a 1-mile radius of the facility and predominately reside along Bayou Black Drive and North Bayou Black Drive," and that as a result of the incident, local law enforcement restricted access to a three-mile stretch of Bayou Black Drive until the next day. Fourteen residents

were displaced from their homes and were not permitted to return until the day after the incident.

Given the effect that the explosion and fire at Station 62 had on the people of Louisiana and of Terrebonne Parish in particular, there is far more reason "for holding the trial in their view" than in the view of the people of Harris County, Texas. These facts weigh especially strongly in favor of dismissal.

### d. Will another forum's law govern the case?

Finally, we consider whether the plaintiffs' claims will be governed by another forum's law:

> The applicable law is determined in Texas by the Restatement's "most significant relationship" test. *Hughes* [*Wood Prods., Inc. v. Wagner*], 18 S.W.3d [202] at 205 (Tex. 2000) (citing RESTATEMENT (SECOND) OF CONFLICT OF LAWS §§ 6, 145 (1971)). The factors to consider in determining the applicable law for a tort case such as this are (1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the residence, nationality, and place of business of the parties; and (4) the place where the relationship, if any, between the parties is centered. *Id.* at 205 n.1 (citing RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145(2) (1971)); *see also* TEX. CIV. PRAC. & REM. CODE § 71.031(c) (providing that in an action for the death caused by actions outside the state, the court shall apply the rules of substantive law that are "appropriate under the facts of the case").

*ENSCO*, 311 S.W.3d at 928.

We begin with the residence, nationality, and place of business of the parties because this factor applies to the claims of all of the nonresident plaintiffs. Station 62 is owned and operated by Transco, a Delaware company with its principal place of business in Texas. Its parent company, Williams Partners L.P., is headquartered

29

in Tulsa and is a subsidiary of The Williams Companies, Inc., a Delaware Company with its principal place of business in Texas. Black Marlin Pipeline LLC is a Texas company; its principal place of business is not identified in the record. The Furmanite Defendants are two Delaware companies and a Virginia company, and each allegedly has its principal place of business in Texas. The ES&H Defendants are two Louisiana companies that allegedly have their principal places of business in Texas. Danos is a Louisiana company; there are no allegations about its principal place of business. And, by definition, none of the nonresident plaintiffs is a Texas resident.

The personal injuries and wrongful deaths at issue all were sustained in Louisiana by individuals performing work in Louisiana. Although the real parties in interest allege that the incident was caused by employees of the Williams Defendants in Texas, none of the people whose injuries or deaths are at issue in this case had a relationship with those companies. Louisiana residents Kidder and Plaisance sue for injuries they received while working for Danos, a Louisiana company. Under the most-significant-relationship test, Louisiana law likely would apply to each of their claims. Louisiana resident Judy Ordoyne sues for the death of Louisiana resident Casey Ordoyne while working for Louisiana company Danos, and Louisiana resident Richard Brinlee sues for the death of Louisiana resident Samuel Brinlee, another Danos employee. Louisiana law likely would apply to these plaintiffs' claims as well.

The remaining nonresident real parties in interest assert claims arising from the death of Illinois resident Jason Phillippe. Phillippe was employed by one of the Furmanite Defendants working as a subcontractor to Danos. Although the decedent

30

was an Illinois resident, and his employer was a Delaware or Virginia company with its principle place of business in Houston, his only relationship with any defendant was centered in Louisiana, where the decedent worked and was fatally injured. Louisiana therefore appears to have the most significant relationship to the claims of Jason Phillippe's derivative claimants.

We conclude that, as to each nonresident real party in interest, the choice-of-law issues weigh in favor of dismissal. Further, after evaluating each of the public-interest considerations, we conclude that the public-interest factors weigh in favor of dismissal.

### 3. *Conclusion*

Having conceded at the outset that an alternate forum capable of exercising jurisdiction over all of the defendants provides an adequate remedy and that dismissing the action would not result in unreasonable duplication or proliferation of litigation, the nonresident real parties in interest effectively admitted that four of the six factors to be considered weighed in favor of dismissal. While it cannot be said that maintaining the action in Texas would work a substantial injustice to the defendants, the balance of private and public interest strongly predominate in favor of bringing the action in Louisiana. Not only would it be inefficient to try the nonresident plaintiffs' claims in Texas when all of the other nonresidents' claims, the physical evidence, and most of the witnesses are in Louisiana, but Louisiana has a particularly strong public interest in having the claims from the incident tried in a forum accessible to its residents. While Texas has an interest in ensuring that corporations conduct their business here responsibly, that interest is served equally well by a suit that is litigated out of its view, and cannot rival the public interest of

31

Station 62's Louisiana neighbors in seeing that enterprises doing business there do not negligently cause them to be denied access to their streets and highways, to be displaced from their homes, or to be otherwise placed at risk.

We sustain this issue as it applies to the nonresident real parties in interest Kristine Phillippe, Nash Phillippe, Knox Phillippe, Memphis Phillippe, Susan White, Albert White, Michael Phillippe, Wayne Plaisance Jr., Judy Ordoyne, Walter Kidder, and Richard Brinlee.

## VI. VACATION OF THE TRIAL COURT'S ORIGINAL RULING

The relators contend that the trial court acted arbitrarily and unreasonably in vacating its original order granting their motions to dismiss before counsel answered the questions that the trial court asked of them concerning Rhodes' residency. We consider this issue only as it pertains to Rhodes; our conditional grant of the writ as to the nonresident real parties in interest renders this issue moot as to them.

The relators' complaint of abuse of discretion is based on the following chronology of events:

The trial court initially granted the relators' respective motions to dismiss as to all plaintiffs on February 21, 2017. Eight days later, the plaintiffs filed a motion for new trial in which they argued that, for the reasons previously stated in their briefing, the trial court should deny the relators' motions to dismiss. On April 3, 2017, the trial court's law clerk wrote to counsel:

Judge Sandill asked me to email you the following questions:

> 1. When did Paula Rhoades [sic] become a Texas resident?
>
> 2. Where can that information be found in the record?

32

He would like to know this information as soon as possible.

Before the parties responded, the trial court wrote to counsel,

> Today, based on my own research and arguments presented by counsel regarding Ms. Rhoades [sic] status as a resident of Texas I am VACATING the Orders of February 21, 2017, and I'm setting a status conference regarding the issue of residency and the Louisiana cases for hearing on Thursday, April 6, 2017 at 10[:]15 [a.m.]

The relators maintain that the trial court acted arbitrarily and unreasonably because, before counsel responded to these questions, the trial court vacated its original order on its own motion.

The relators cite no authority, and we have found none, holding that a trial court abuses its discretion by discovering the answers to its questions from the record and its own research. Having found no support for the relators' position, we cannot conclude that the trial court clearly abused its discretion. We overrule this issue.

## VII. CONCLUSION

We deny the petition for writ of mandamus as to resident real party in interest Paula Rhodes, and we conditionally grant the writ of mandamus as to the remaining real parties in interest. We order the trial court to amend its order of April 11, 2017, which granted the relators' motions to dismiss as to Alisa Evans and denied it as to all other litigants, to instead deny the motions to dismiss as to Paula Rhodes, and as to all other litigants, to grant the motions to dismiss on such terms and conditions as the trial court determines that the interests of justice require. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 71.051(c). The writ will issue only if the trial court fails to act in accordance with this opinion.

33

We lift our stay entered on June 12, 2017.

/s/     Tracy Christopher
        Justice

Panel consists of Justices Christopher, Brown, and Wise.

34