**Opinion issued August 30, 2018**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-17-00935-CV

————————————

**KHAI HUYNH, Appellant**

**V.**

**CHRISTINE T. HANG NGUYEN, Appellee**

---

**On Appeal from the 80th District Court**
**Harris County, Texas**
**Trial Court Case No. 2017-47236**

---

## MEMORANDUM OPINION

In this interlocutory appeal,[1] appellant, Khai Huynh, challenges the trial court's order denying his special appearance in the suit of appellee, Christine T. Hang Nguyen, against him for breach of fiduciary duty and misappropriation of

---

[1]   TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(7) (Vernon Supp. 2017).

image and likeness. In his sole issue, Huynh contends that the trial court erred in denying his special appearance.

We affirm in part and reverse and render in part.

## Background

In her amended petition,[2] Nguyen alleges that although she is a United States citizen, she and her husband reside in Vietnam, where they lead a ministry "serving the poor of Ho Chi Minh City." Her ministry receives support from direct gifts as well as from the "Go.Be.Hope charity headquartered in McKinney, Texas." Huynh is a high-level "agent" with Seacret Direct, a company that "sells Dead Sea Minerals and Cosmetics through its multi-level marketing . . . channels." And he recruited a group of "agents" of Vietnamese heritage, many of whom live and work in Texas, to sell underneath him (or "down-line"). Huynh named the group

---

[2] We conclude that Huynh's argument that Nguyen's amended petition should not be considered because it was filed untimely, without leave of court and only two days before the special appearance hearing, is without merit. *See* TEX. R. CIV. P. 63. Even presuming, without deciding, that rule 63 applies in this case, Huynh made no showing of surprise or prejudice in his motion to strike the amended pleading. *See* TEX. R. CIV. P. 63; *see also Goswami v. Metro. Sav. & Loan Ass'n*, 751 S.W.2d 487, 490 (Tex. 1988) (explaining Rule 63 interpreted liberally and "in the absence of a sufficient showing of surprise by the opposing party, the failure to obtain leave of court when filing a late pleading may be cured by the trial court's action in considering the amended pleading"). The lack of surprise or prejudice is supported by the fact that the additions to Nguyen's pleading, such as discussions of payments distributed in Texas to Texas residents, is directly addressed in her response to his special appearance. Further, it does not appear that Huynh obtained a ruling from the trial court on his objection or objected to the trial court's failure to rule. *See* TEX. R. APP. P. 33.1(a).

2

"TeamSeacret," which had its own Facebook page and held events for its members.

Nguyen further alleges that in 2014, Huynh visited her in Ho Chi Minh City and "assisted [her] charity in distributing meals to the poor." In September 2014, Huynh, unbeknownst to Nguyen, sent out an electronic invitation to TeamSeacret for a "Talent Night," the purpose of which was "to celebrate the success of Vietnamese workers at SEACRET and concurrently raise funds for [Nguyen] . . . to help fund an education and feeding charity program for children living in slums during Christmas and New Years."[3] In a Facebook post on the TeamSeacret page, Huynh explained that the price of admission to the event would first cover the costs and any "extra will go to [c]harity." He further stated that he would "match 100%" of the amount "left[]over from the event."

In October 2014, Huynh met with Nguyen again in Vietnam and told her that "he intended to raise money for her charity," asking her to send "pictures and videos" that he could "use to promote" her charity at the TeamSeacret event. Nguyen sent Huynh a video of some of the children her charity served in the slums of Vietnam, and she thanked TeamSeacret "for being the beneficiary of the [c]harity [e]vent."

---

[3]     Nguyen also alleges that this electronic invitation was later edited to remove reference to her charity.

On November 9, 2014, TeamSeacret held the charity event in Arizona, raising $24,130 "over and above expenses." After the event, Huynh published the results of the funds raised on his Facebook page and represented that, after donating $400 of his own money, $24,530 would be placed in "the TeamS[eacret] Charity." Nguyen alleges, however, that there is no such charity and Huynh kept the money raised either at his home in cash or in his bank account. Nguyen further alleges that, due to Huynh's promise to match the donations at 100%, the total amount of funds due to her charity is $48,260.00.

In December 2014, Huynh represented to Nguyen that the total amount of money raised at the event was only $3,000, he asked her permission to give $1,000 of the funds to another Vietnamese charity, and she agreed. And, on December 27, 2014, Huynh's assistant delivered $2,000 to her. Nguyen then asked Huynh for permission to thank the group for their donation in a Facebook post. In his response, Huynh agreed, but instructed her that there was "no need to say the amount of money that . . . had [been raised] for [her] charity in her thank you Facebook posting." At the time, she did not realize that the charity event had raised more money. And she received no further payments from Huynh.

By February 2015, TeamSeacret members began inquiring about what had happened with the remaining donations. In response, Huynh suggested additional charities to which TeamSeacret should give the remaining funds, and he also

4

returned some of the money to donors. However, Huynh, after March 2015, did not make any further public postings about the funds or otherwise publicly account for his management of the donations.

In August 2015, one TeamSeacret member, Dam K. Dinh ("Quarter"), made a public post on Facebook, accusing Huynh of stealing the donations raised at the Arizona charity event. In response, Huynh hired the Houston-based Tammy Tran Law Firm to represent him in a possible libel suit. Huynh also told Nguyen that he had "returned much of [the money] to the donors and that he intended to give the remaining money to the Joel Osteen ministry in Houston." Several of the donors who had their money returned reside in Texas. And instead of donating to the Joel Osteen ministry, Huynh gave $5,630 to Sharon Gartman, who runs a charity benefiting children, in Houston, Texas. Huynh ultimately filed a defamation lawsuit against Quarter, a Michigan resident, and two others in Texas.

In regard to her claim for breach of fiduciary duty, Nguyen alleges that Huynh represented to her and the attendees of the charity event that its purpose was to raise money for Nguyen's charity. Thus, Huynh had a fiduciary duty to deliver the funds raised to Nguyen's charity after the event, and he breached this duty by returning some of the funds to donors and donating the rest to Gartman's charity. In regard to her claim for misappropriation of image and likeness, Nguyen alleges that Huynh "appropriated [her] image and likeness to induce the people at

5

the [c]harity [e]vent to attend . . . and donate money." She further alleges that Huynh used her image and likeness to "bring honor and credit upon himself and to raise money" that he ultimately did not provide to Nguyen after the event as promised. Nguyen seeks to recover actual damages in the amount of $45,260, exemplary damages, and her attorneys' fees.

Huynh filed a special appearance, asserting that Texas does not have general or specific jurisdiction over him and the exercise of jurisdiction over him would offend traditional notions of fair play and substantial justice. He attached to his special appearance the "Declaration of Khai Huynh," in which he testified that he is not a resident of Texas, is not domiciled in Texas, is not required to maintain a registered agent for service of process in Texas, does not maintain a residence or place of business in Texas, and has no employees, mailing address, telephone listing, or bank account in Texas.

Nguyen filed a response, asserting that Huynh regularly conducts business in Texas and "committed numerous torts in Texas," including the breach of his fiduciary duty to Nguyen by "making unauthorized distributions" of the charity funds to Texas residents, among others. She argues that Texas courts have general jurisdiction over Huynh because he has "systematic and continuous business contacts with the State of Texas," including several downline agents who live and work in the State. And she argues that Texas courts have specific jurisdiction over

6

Huynh because he committed three separate breaches of fiduciary duty in Texas by donating the charity funds to Gartman and returning them to two donors from Texas instead of giving them to Nguyen.

Nguyen attached to her response deposition and trial testimony excerpts from Huynh's defamation suit against Quarter. These include excerpts from Huynh's deposition, in which he testified that he learned of Gartman and her charity through his contacts in Texas, and, although he does not live in Houston, he comes here "all the time." They also include excerpts from Gartman's deposition, in which she testified that she received a donation from Huynh when she met with him at Tammy Tran's office in Houston, Texas. Additionally, Tiffany La and Tuan Huynh testified that Huynh returned their donations to them during meetings with him in Texas.

Nguyen also filed a supplemental response to Huynh's special appearance, attaching three additional exhibits.[4] The first exhibit is a two-year Lease Agreement, in which Huynh is listed as the "tenant," commencing on March 1, 2014, for commercial space in Houston, Texas. The second and third exhibits are certificates of formation for Texas limited liability companies that list Huynh, with his California address, as a managing member.

---

[4] Because we do not rely on these documents in reaching our holding, we do not address Huynh's contention that they were inadmissible in the trial court. *See* TEX. R. APP. P. 47.1.

Huynh then filed a supplemental special appearance, attaching additional exhibits in support of his assertion that Texas courts do not have jurisdiction over him. These exhibits include his revised declaration in which he testified that he either donated to charity or returned to donors all of the money raised by TeamSeacret at the Arizona charity event. He further testified that he does not, nor has he ever, derived any income or benefit from the two limited liability companies registered in Texas that list him as a member, he did not execute the lease that lists him as a tenant for commercial space in Houston, and he does not operate the premises subject to that lease. The remaining exhibits include declarations from donors to whom Huynh returned money and excerpts from Quarter and Nguyen's depositions in the defamation case.

In support of his special appearance, Huynh also filed a brief in which he accounts for the money raised at the Arizona charity event as being returned to the donors or otherwise donated to charities. He further argues that Texas courts cannot exercise general jurisdiction over him because he is not "essentially at home in the forum," even though he does travel here regularly for business. He further alleges that he is a resident of California, does not maintain a place of business in Texas, and the "mere fact that some of [his] downline [agents] reside in Texas is insufficient" to confer general jurisdiction. In regard to specific jurisdiction, Huynh alleges that all of his in-person contacts with Nguyen were at

meetings in Vietnam, and any alleged breach of fiduciary duty would have occurred in Arizona, where Huynh collected the donations, or in Vietnam, where he gave Nguyen less than all of the money raised.

Following a hearing, the trial court denied Huynh's special appearance.

## Standard of Review

The existence of personal jurisdiction is a question of law, which must sometimes be preceded by the resolution of underlying factual disputes. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002); *Paul Gillrie Inst., Inc. v. Universal Comput. Consulting, Ltd.*, 183 S.W.3d 755, 759 (Tex. App.—Houston [1st Dist.] 2005, no pet.); *Preussag Aktiengesellschaft v. Coleman*, 16 S.W.3d 110, 113 (Tex. App.—Houston [1st Dist.] 2000, pet. dism'd w.o.j.). When the underlying facts are undisputed or otherwise established, we review a trial court's denial of a special appearance de novo. *Paul Gillrie Inst.*, 183 S.W.3d at 759. Where, as here, a trial court does not issue findings of fact or conclusions of law with its special appearance ruling, all fact findings necessary to support the judgment and supported by the evidence are implied. *Marchand*, 83 S.W.3d at 795; *Paul Gillrie Inst.*, 183 S.W.3d at 759.

A trial court determines a "special appearance on the basis of the pleadings, any stipulations made by and between the parties, such affidavits and attachments as may be filed by the parties, the results of discovery processes, and any oral

9

testimony." TEX. R. CIV. P. 120a(3). The plaintiff bears the initial burden of pleading allegations sufficient to bring a nonresident defendant within the provisions of the Texas long-arm statute. *Am. Type Culture Collection v. Coleman*, 83 S.W.3d 801, 807 (Tex. 2002); *Paul Gillrie Inst.*, 183 S.W.3d at 759. The burden of proof then shifts to the nonresident to negate all the bases of jurisdiction alleged by the plaintiff. *Kawasaki Steel Corp. v. Middleton*, 699 S.W.2d 199, 203 (Tex. 1985) (per curiam); *see also Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 658 (Tex. 2010) ("Because the plaintiff defines the scope and nature of the lawsuit, the defendant's corresponding burden to negate jurisdiction is tied to the allegations in the plaintiff's pleading.").

### Personal Jurisdiction

In his sole issue, Huynh argues that the trial court erred in denying his special appearance because he is not subject to general or specific jurisdiction in Texas.

A court may assert personal jurisdiction over a nonresident defendant only if the requirements of both the Fourteenth Amendment's due process clause and the Texas long-arm statute are satisfied. *See* U.S. CONST. amend. XIV, § 1; TEX. CIV. PRAC. & REM. CODE ANN. § 17.042 (Vernon 2015); *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 226–27 (Tex. 1991). The Texas long-arm statute allows a court to exercise personal jurisdiction

over a nonresident defendant who does business in Texas. TEX. CIV. PRAC. & REM. CODE ANN. § 17.042. A nonresident "does business" in Texas if he "contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part" in Texas, he "commits a tort in whole or in part" in Texas, or he "recruits Texas residents, directly or through an intermediary located in this state, for employment inside or outside this state." *Id.* The Texas Supreme Court has repeatedly interpreted this statutory language "to reach as far as the federal constitutional requirements of due process will allow." *Guardian Royal*, 815 S.W.2d at 226. Therefore, the requirements of the Texas long-arm statute are satisfied if the exercise of personal jurisdiction comports with federal due process limitations. *Id.*

The United States Constitution permits a state to assert personal jurisdiction over a nonresident defendant only if he has some minimum, purposeful contacts with the state and if the exercise of jurisdiction will not offend traditional notions of fair play and substantial justice. *Dawson-Austin v. Austin*, 968 S.W.2d 319, 326 (Tex. 1998). A nonresident who has purposefully availed himself of the privileges and benefits of conducting business in the state has sufficient contacts with the state to confer personal jurisdiction. *See Guardian Royal*, 815 S.W.2d at 226.

The "purposeful availment" requirement has been characterized by the Texas Supreme Court as the "touchstone of jurisdictional due process." *Michiana*

11

*Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 784 (Tex. 2005). In

*Michiana*, the court articulated three important aspects of the purposeful availment

inquiry. *Id.* at 785. First, only the defendant's contacts with the forum count. *Id.*

This ensures that a defendant is not haled into a jurisdiction solely by the unilateral

activities of a third party. *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S.

462, 475, 105 S. Ct. 2174, 2183 (1985)). Second, the acts relied on must be

purposeful; a defendant may not be haled into a jurisdiction solely based on

contacts that are "random, isolated, or fortuitous." *Id.* (citing *Keeton v. Hustler*

*Magazine, Inc.*, 465 U.S. 770, 774, 104 S. Ct. 1473, 1478 (1984)). Third, a

defendant "must seek some benefit, advantage, or profit by 'availing' itself of the

jurisdiction" because "[j]urisdiction is premised on notions of implied consent"

and by "invoking the benefits and protections of a forum's laws, a nonresident

consents to suit there." *Id.* (citing *World-Wide Volkswagen Corp. v. Woodson*, 444

U.S. 286, 297, 100 S. Ct. 559, 567 (1980)).

A defendant's contacts with a forum can give rise to either general or

specific jurisdiction. *Marchand*, 83 S.W.3d at 795. General jurisdiction is present

when a nonresident's "affiliations with the [s]tate are so continuous and systematic

as to render [him] essentially at home in the forum [s]tate," even if the cause of

action did not arise from or relate to activities conducted within the forum state.

*Daimler AG v. Bauman*, 571 U.S. 117, 139, 134 S. Ct. 746, 761 (2014) (quoting

*Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919, 131 S. Ct. 2846, 2851 (2011)); *see also Marchand*, 83 S.W.3d at 796. General jurisdiction requires a showing that a defendant conducted substantial activities within the forum, a "more demanding minimum contacts analysis" than for specific jurisdiction. *PHC-Minden, L.P. v. Kimberly-Clark Corp.*, 235 S.W.3d 163, 168 (Tex. 2007). Specific jurisdiction, however, is established if the defendant's alleged liability arises from or relates to an activity conducted within the forum. *Marchand*, 83 S.W.3d at 796. When specific jurisdiction is asserted, the minimum contacts analysis focuses on the relationship between the defendant, the forum, and the litigation. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 575–76 (Tex. 2007).

Foreseeability is an important consideration in deciding whether a nonresident has purposefully established minimum contacts with the forum state. *Burger King Corp.*, 471 U.S. at 474, 105 S. Ct. at 2183; *Guardian Royal*, 815 S.W.2d at 227. The concept of foreseeability is implicit in the requirement that there be a substantial connection between the nonresident defendant and Texas, arising from actions or conduct of the nonresident defendant purposefully directed toward Texas. *Guardian Royal*, 815 S.W.2d at 227.

*General Jurisdiction*

In a portion of his sole issue, Huynh argues that Texas courts cannot exercise general jurisdiction over him because he lacks the kind of contacts which would render him essentially at home in the forum.

"For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Goodyear*, 564 U.S. at 924, 131 S. Ct. at 2853. Under Texas law, a "domicile" is (1) an actual residence that is (2) intended to be a permanent home. *Willig v. Diaz*, No. 01-15-00073-CV, 2016 WL 2955395, at *3 (Tex. App.—Houston [1st Dist.] May 19, 2016, no pet.) (mem. op.) (citing *Snyder v. Pitts*, 241 S.W.2d 136, 139 (Tex. 1951)); *see also Domicile*, BLACK'S LAW DICTIONARY (10th ed. 2014) (defining "domicile" as "[t]he place at which a person has been physically present and that the person regards as home; a person's true, fixed, principal, and permanent home, to which that person intends to return and remain even though currently residing elsewhere").

Here, there is no dispute that Huynh is domiciled in California. Nevertheless, Nguyen argues that a Texas court can exercise general jurisdiction over him because he has admitted that he comes to Texas "all the time," some of his downline partners on TeamSeacret live and work in Texas, he has leased office space in Texas, he was listed as a managing member on two certificates of formation for Texas limited liability companies, and he filed a defamation lawsuit

14

as a plaintiff in Texas. But Huynh also submitted to the trial court a declaration stating that he is not a resident of or domiciled in Texas, he is not required to maintain a registered agent for service of process in Texas, he does not maintain a residence or place of business in Texas,[5] and he has no "employees, mailing address, telephone listings or bank accounts in Texas." And there is nothing in the record that contradicts these statements. From this record, Huynh appears to travel to Texas primarily for business. Thus, there is no basis to support an assertion that Texas is essentially his second domicile. *See Searcy v. Parex Res., Inc.*, 496 S.W.3d 58, 72 (Tex. 2016) ("Continuous and systematic contacts that fail to rise to" level of rendering defendant essentially at home in forum state "are insufficient to confer general jurisdiction over a nonresident defendant").

Accordingly, we hold that Huynh is not subject to general jurisdiction in Texas.

We sustain this portion of Huynh's sole issue.

### *Specific Jurisdiction*

In another portion of his sole issue, Huynh argues that Texas courts cannot exercise specific jurisdiction over him because he has not purposefully availed

---

[5] As noted above, Huynh also attached to his supplemental special appearance a declaration, in which he states that he does not operate the premises subject to the lease.

himself in Texas and his Texas contacts do not bear a substantial connection to the operative facts of the litigation.

We analyze specific jurisdiction on a claim-by-claim basis. *Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 414 S.W.3d 142, 150 (Tex. 2013). In order for a nonresident defendant's forum contacts "to support an exercise of specific jurisdiction, there must be a substantial connection between those contacts and the operative facts of the litigation." *Moki Mac*, 221 S.W.3d at 585 (citing *Guardian Royal*, 815 S.W.2d at 229–33).

### *Misappropriation of image and likeness*

Regarding her claim for misappropriation of image and likeness, Nguyen conceded at the special appearance hearing before the trial court that this "took place in Arizona" and did not arise from or relate to any of Huynh's contacts with Texas. Further, the record reveals that the videotape that forms the basis of this claim was made in Vietnam, sent to Huynh by electronic mail, and used at the charity dinner in Arizona.

Accordingly, we hold that the trial court erred in denying Huynh's special appearance in regard to Nguyen's claim for misappropriation of image and likeness. *See Moki Mac*, 221 S.W.3d at 585.

We sustain this portion of Huynh's sole issue.

16

*Breach of fiduciary duty*

Regarding her claim for breach of fiduciary duty, Nguyen asserts that Huynh collected and controlled funds donated for her charity's benefit and he breached his fiduciary duty to her by distributing those funds to other persons and charities. She further asserts that Huynh purposefully availed himself of the privileges and benefits of Texas by filing a related defamation case in this state, improperly returning donations to two Texas residents, and donating a portion of the money to a Texas charity. Huynh does not dispute these purposeful contacts with Texas, but asserts that they are insufficient to establish specific jurisdiction over him.

Voluntarily filing a lawsuit in a jurisdiction constitutes a purposeful availment of the jurisdiction's facilities and can subject a party to personal jurisdiction in another lawsuit when the two lawsuits arise from the same general transaction.[6] *Waterman Steamship Corp. v. Ruiz*, 355 S.W.3d 387, 422 (Tex. App.—Houston [1st Dist.] 2011, pet. denied) (citing *Zamarron v. Shinko Wire Co.*, 125 S.W.3d 132, 143 (Tex. App.—Houston [14th Dist.] 2003, pet. denied)). And,

---

[6] We reject Huynh's assertion that Nguyen waived this argument by not raising it in the trial court. She specifically addressed the issue of Huynh's Texas-based defamation suit as a jurisdictional contact in her response to his special appearance as well as at the hearing before the trial court. As explained by the Texas Supreme Court, "[w]e do not consider *issues* that were not raised in the courts below, but parties are free to construct new *arguments* in support of issues properly before the [c]ourt." *Greene v. Farmers Ins. Exch.*, 446 S.W.3d 761, 764 n.4 (Tex. 2014). Nguyen's point that Huynh's defamation suit constitutes purposeful availment in Texas is merely a new argument in support of the issues she raised in the trial court and reurges on appeal.

17

from the record before us, we conclude that the defamation action and this action are sufficiently factually related such that they arise from the same general transaction.[7]

Huynh argues that the two actions are not connected because his defamation action "arose from a campaign to damage [his] reputation by non-parties to this lawsuit who published comments on Facebook . . . that [Huynh] stole over $25,000 of charity money" whereas "[Nguyen]'s lawsuit arose . . . from an alleged meeting with [Huynh] in Vietnam" where he told her that he would raise money for her charity and "allegedly failed to honor that commitment when he only gave her $2,000." However, the entire basis of the alleged defamatory statement at issue in Huynh's action concerned his handling of the money raised at the TeamSeacret charity event in Arizona that Nguyen alleges, in this action, Huynh had represented was being held for her charity's benefit. Thus, the money that was raised at the event discussed in the Facebook post is the same money that Nguyen alleges Huynh improperly withheld from her charity or distributed to others. It is readily foreseeable that there will be significant factual overlap between the two cases,

---

[7]     Significantly, Huynh does not, nor cannot, argue that the exercise of specific jurisdiction over him in this suit in regard to Nguyen's breach-of-fiduciary-duty claim would offend traditional notions of fair play and substantial justice. In his deposition in the defamation action, Huynh testified that he does not live here, but he comes to Texas "all the time." Further, he chose Texas as the forum for his defamation action and hired a Texas-based attorney, so it is presumably not inconvenient or a burden for him to litigate in the state.

18

even if the causes of action and parties are not identical. Additionally, both Huynh and Nguyen were deposed in the defamation action, along with several other witnesses whose testimony and affidavits both parties relied upon in their special appearance briefing in the trial court.

Accordingly, we hold that Huynh is subject to specific jurisdiction in Texas in regard to Nguyen's breach-of-fiduciary-duty claim.[8]

We overrule this portion of Huynh's sole issue.

---

[8] Having held that the defamation action filed by Huynh is sufficient to support specific jurisdiction over Nguyen's breach-of-fiduciary-duty claim, we need not address her assertion that Huynh's distribution of funds to Texas residents also supports personal jurisdiction over him. *See* TEX. R. APP. P. 47.1.

## Conclusion

We reverse the portion of the trial court's order denying Huynh's special appearance in regard to Nguyen's claim for misappropriation of image and likeness. And we render judgment dismissing this claim against him for lack of personal jurisdiction. We affirm the remaining portions of the trial court's order.


Terry Jennings
Justice

Panel consists of Chief Justice Radack and Justices Jennings and Lloyd.

20